## 17726

W. Lewis WALLACE, Ancillary Receiver for South Carolina for Keystone Mutual Casualty Company, of Pittsburgh, Pennsylvania, dissolved, Appellant, v. Eva McDonald TIMMONS, Individually and as Executrix of the Estate of William H. Timmons, Respondent.

(117 S. E. (2d) 567)

*Messrs. Thomas A. Wofford* and *Charles B. Bowen,* of Greenville, *for Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

December 14, 1960.

LEGGE, Justice.

This is an appeal from a circuit court order denying the plaintiff's motion to require the defendant to produce for inspection on the part of the plaintiff certain books and records of the William R. Timmons Agency.

Appellant, as ancillary receiver of Keystone Mutual Casualty Company of Pittsburgh, Pennsylvania, brought this action in 1956 against the respondent individually and as executrix of the estate of her late husband, William R. Tim-

mons, for an accounting of moneys allegedly collected by him as agent of said company and in his possession at the time of his death in 1948. On a former appeal, from an order sustaining a demurrer to the complaint, we held, 232 S. C. 311, 101 S. E. (2d) 844:

1. That since the plaintiff had conceded that the claim against the defendant in her capacity as executrix was barred because not filed within the time prescribed by Section 19-474 of the 1952 Code, the only question presented by the appeal, in respect of that statute, was whether the claim against the defendant individually, as sole distributee of her husband's estate, was barred by it.

2. That Sections 19-473 and 19-474 relate to claims of creditors and debts of a decedent payable from his estate and are not applicable to a case such as this, where it is alleged and must be taken as true upon demurrer that the moneys collected by the decedent constituted a trust fund; for if the decedent held the fund in trust its character was not changed by his death and it did not become part of his estate or liable for his debts.

3. That whether or not a trust relationship as to these funds did in fact exist was a matter for determination upon the trial of the case on its merits.

4. That in view of the allegations of the complaint the question of laches should not have been passed upon by the circuit judge at that stage of the case, but should have been left for determination upon the trial of the case on its merits.

5. The order appealed from was reversed and the cause remanded with leave to the defendant, individually, to answer the complaint.

The allegations of the complaint as summarized in the report of the former appeal are repeated here for convenient reference:

"The complaint alleges that the plaintiff is the ancillary receiver in this state for the Keystone Mutual Casualty

Company, a Pennsylvania corporation now dissolved; on March 13, 1944, William R. Timmons, now deceased, and the Keystone Mutual Casualty Company entered into an agency agreement, a copy of the agreement is attached and made a part of the complaint; pursuant to the agreement William R. Timmons collected large sums of money for the Keystone company, and that under the terms of the agreement he became the trustee of such monies for the benefit of the company; Mr. Timmons died testate on June 22, 1948, leaving an estate valued at more than $500,000.00, with his wife, the defendant Eva McDonald Timmons, as executrix and sole beneficiary; on July 25, 1948, Mrs. Timmons was appointed executrix of the estate; at the time of the death of Mr. Timmons he had in his possession $25,-504.72 belonging to the Keystone company; that this sum was impressed with a trust under the agency agreement; the decedent had on deposit in three banks the sum of $61,-638.34, in accounts denominated 'W. R. Timmons, Agency', with which accounts the sum held by him as trustee was commingled; and the three banks have turned over the deposits to the defendant as executrix.

"That on September 13, 1951, the plaintiff filed a claim against the decedent's estate in the amount of $25,504.72; the claim was not filed within the time required by section 19-474 of the code, and a hearing on it was never had, and it was never honored or refused; the estate has never been settled; that the plaintiff is entitled to an accounting respecting the trust funds, and to have them held for disposal as he shall direct; and that to allow the defendant to keep the funds would be an unjust enrichment.

"One paragraph of the attached agreement is as follows: 'The agent agrees that all money or securities received or collected by him shall be held by him in trust for the benefit of the Company, and remitted to the Company in strict accordance with the rules and regulations of the Company and the terms of this agreement.'

"The prayer is for an accounting; that the defendant be required to pay over the trust funds to the plaintiff; and that the plaintiff have judgment against the defendant, individually and as executrix, in the amount of the trust funds."

Upon remand of the cause the defendant answered:

1. admitting that her late husband had on March 13, 1944 entered into the agency agreement referred to in the complaint and a copy of which was attached to the complaint as part of it, but denying that under the terms of said agreement he became or was constituted a trustee for Keystone;

2. admitting that Mr. Timmons died on June 22, 1948, leaving an estate valued at more than $500,000.00, and that she is the executrix and sole beneficiary of his will and has never been discharged as such executrix, but alleging that the estate has been settled and that she has made application for discharge as executrix, notice thereof having been advertised on or about June 16, 1949;

3. admitting that plaintiff filed in the probate court his claim against the estate on or about September 13, 1951; but alleging that the claim is barred because not filed within the time prescribed by Section 19-474, is barred also by the general statutes (Section 10-141 *et seq.*) limiting the periods within which actions other than for the recovery of real property must be commenced, and is barred also by laches; and

4. denying all allegations not expressly admitted.

Appellant's motion, from denial of which comes the present appeal, was for an order "requiring the defendant to produce for inspection by plaintiff's attorneys and plaintiff's accountant such books, records and other papers of the William R. Timmons Agency as will reveal the following: (1) The moneys collected, if any, by William R. Timmons from the ninety-four (94) policy holders listed in Exhibit A which is attached hereto; (2) Any and all offsets said rec-

ords may reveal defendant is claiming or entitled to as a result of the insolvency of Keystone Mutual Casualty Company, dissolved on June 26, 1947."

In support of the motion there were presented certain affidavits and correspondence, in substance as follows:

1. Letter from Francis X. McClanaghan, Special Deputy Insurance Commissioner of the Commonwealth of Pennsylvania, addressed to Mr. Cox, of counsel for the plaintiff, under date October 15, 1958, advising that under the laws of Pennsylvania the Insurance Commissioner is designated as receiver of insolvent insurance companies to collect their assets and distribute them to claimants and creditors; that the records of Keystone Mutual Casualty Company in the possession of the Commissioner indicate that under ninety-four separate policies Keystone had insured certain individuals at the request of the Timmons Agency, which by the terms of its agency agreement with Keystone was a fiduciary or trustee of the latter; and that each such policy would have been cancelled sixty days after issuance if the insured had not paid his premium to the Timmons Agency; that from this the Commissioner has deduced that the Timmons Agency must have collected these premiums, or most of them, and owed Keystone the money involved in this action when Keystone was taken over by the Commissioner; in addition, that several of these insureds had advised the Commissioner that they had paid their premiums to the Timmons Agency; and that in these circumstances it would seem most pertinent to ascertain what the records of the Timmons Agency might disclose as to these ninety-four policies. In conclusion the Deputy Commissioner stated that if such records should clearly indicate that the Timmons Agency did not receive this money, his office would reexamine its position with regard to pressing its claim and might possibly authorize counsel to withdraw the action; and he requested that Mr. Cox make the necessary arrangements with counsel for the Timmons Agency for examination of these records, and if consent to do so could

not be obtained, that he seek an order of court for such examination.

2. Letter from Mr. Cox to Mr. Walker, of counsel for the defendant, dated October 31, 1958: referring to Mr. McClanaghan's letter before mentioned; enclosing a list of the ninety-four insureds and the numbers of their respective policies; referring to his understanding of an agreement between counsel for the parties whereby defendant's counsel would obtain from his client and transmit to plaintiff's counsel such information as the books of Timmons Agency might contain with regard to the said insureds and policy numbers; referring also to a conversation between Mr. Cox and Mr. Walker wherein the latter had mentioned the fact that after Keystone had gone into receivership Mr. Timmons had secured other insurance coverage for these policy holders, and Mr. Cox had expressed the view that in such case Mr. Walker's client would be entitled to an offset against plaintiff's claim; and requesting that Mr. Walker have his client furnish Mr. Cox as promptly as practicable the information contained in the books of Timmons Agency concerning the policies and policy holders before mentioned.

3. Letter from Mr. Walker to Mr. Cox advising that a check of the list of names and policy numbers enclosed with Mr. Cox's letter of October 31 had revealed that the list included some policies that had not been written under the agency agreement; returning the list, advising that "it does not provide us with any information with regard to the subject litigation;" and refusing Mr. Cox's request.

4. Affidavit of Francis X. McClanaghan, Deputy Insurance Commissioner, dated January 9, 1959, setting forth among other things the following:

(a) That on June 26, 1947, by decree of the Court of Common Pleas of Dauphin County, Pennsylvania, Keystone Mutual Casualty Company was ordered to be dissolved and the Insurance Commissioner of Pennsylvania was ordered to take possession of its records and other property for

the purpose of liquidating its affairs and making distribution to creditors.

(b) That prior to the receivership the company employed several hundred people and had compiled voluminous records all of which came into the possession of the Insurance Department for inspection and review; but that because of the company's financial difficulties, and in order to preserve its assets in the possession of the Insurance Commissioner, it became necessary to discharge many of the company's employees and many others quit of their own accord, leaving only a skeleton force to carry on the necessary work.

(c) That the late William R. Timmons was an agent of Keystone in Greenville, S. C., at the time of the receivership; and that up to the time of his death on June 22, 1948, he had failed, according to affiant's information and belief, to submit an accounting of moneys collected and held in trust by him as agent of said dissolved company; and that since his death the representative of his estate has also failed to submit such accounting although frequently requested to do so.

(d) That according to available records and information in the possession of the receiver, Mr. Timmons was indebted to Keystone at the time of his death in the sum of $15,-881.70.

In opposition to the motion the defendant contended:

1. That from the documents presented with her return (and to which we shall later refer) it is obvious that the plaintiff has available to him sufficient records and other information to prove that his claim as set forth in the complaint is without merit;

2. That defendant's showing in support of the motion was insufficient to enable the court to determine whether the documents sought to be produced contain evidence as to policies involved under the agency agreement; and further, that records pertaining to offsets in favor of the defendant would concern the defense, and production of them under the discovery statute is prohibited.

3. That the motion seeks compulsory disclosure of information from records and files of business entities that are separate and distinct from the defendant and over which she has no authority or control, "and only a small portion of the ninety-four insurance policies contained in the list attached to the present motion are involved under the agency agreement on which this action is based."

The documents submitted by the defendant with her return are the following:

1. Letter dated December 13, 1955, from Emmanuel Weinberg, Special Deputy Insurance Commissioner of Pennsylvania, by Jack Litz, to Thomas A. Wofford, of counsel for the plaintiff, stating: that among the assets of Keystone taken over by the statutory liquidator were two accounts of William R. Timmons Agency, *viz.*: a direct agent's account, to which the agency agreement was applicable, showing an unpaid balance due Keystone as of June 26, 1947, in the amount of $21,898.23; and an account of William R. Timmons Agency as sub-agent of Baylor's Insurance Service, a general agency for Keystone, on which account the unpaid balance as of June 26, 1947, was $3,506.49; that these two accounts among the records of Keystone total $25,404.72; that the Commissioner's office file does not contain an affidavit, previously mentioned by Mr. Wofford, stating that the Commissioner's claim against Mr. Timmons' estate was in the amount of $25,504.72; that it is Mr. Weinberg's thought that this affidavit may have been sent to Mr. Wofford by the ancillary receiver in South Carolina; that the difference of $100.00 between the amount mentioned in the affidavit and the total of the two agency accounts before mentioned is found in the Columbia Company file, relative to Policy No. 3843, and the Columbia Company's account would appear to be entitled to a cancellation credit of $100.00; that he is enclosing itemized statements of the two accounts of the Timmons Agency before mentioned, but "we are unable to give you a definite statement of what portion of the total of the two accounts open

as of the dissolution of Keystone would be due from the estate of William R. Timmons, as this requires an audit of the records of the Agency and no audit was made by the statutory liquidator subsequent to dissolution."

2. Letter dated February 7, 1956, from Mr. Wofford to Mr. William M. Brice, Jr., Attorney, of York, S. C., advising that a hearing in the matter has been set by the Probate Court for February 18, 1956, subject to reasonable postponement if necessary so that Senator Wallace may be available as a witness; requesting that Mr. Brice contact the Senator and advise Mr. Wofford; and stating that in the meantime he would arrange with the Pennsylvania Insurance Department to make available a witness having knowledge of the condition of Keystone's records in the possession of that department.

3. Letter dated February 7, 1956 from Mr. Cox to Mr. Litz advising of the postponement of the February 18 hearing so that a witness might be available from the Commissioner's office to testify to the condition of the account between Keystone and Timmons at the time of the latter's death; and requesting information on the condition of the dissolved corporation with respect to the William R. Timmons Agency as of the date of Mr. Timmons' death.

4. Letter dated February 7, 1956 from Mr. Cox to the Probate Judge of Greenville County, advising that as soon as he can ascertain from the Insurance Department of Pennsylvania when a witness will be available to testify as to Mr. Timmons' indebtedness to Keystone as shown by Keystone's books, he will notify the Probate Judge so that a hearing might be set at which that witness and Senator Wallace could be present.

5. Affidavit of Gordon K. Rodgers, dated March 11, 1959, stating: that he has been in the employ of William R. Timmons Agency for approximately fourteen years, is familiar with the records of said agency, and has made a study of them at the request of counsel for Mrs. Timmons; and that he "has examined the list of ninety-four

(94) insurance policies which plaintiff would claim to be involved in the present matter and deponent says that only a small portion of the ninety-four (94) insurance policies contained in the list attached to the present motion are involved under the Agency Agreement that is attached to and made a part of the complaint."

Section 26-503 of the 1952 Code, relating to pre-trial examination of an adversary party, has for its aim the promotion of efficient administration of justice by permitting a litigant to gather his evidence in advance and thus be enabled to present it at the trial concisely, economically, and without undue waste of the court's time. *Barfield v. Dillon Motor Sales, Inc.,* 233 S. C. 26, 103 S. E. (2d) 416. Section 26-502, under which plaintiff's motion in the case at bar was laid, is concerned with pre-trial inspection of books, papers and documents, in the possession or under the control of the adversary party, containing evidence relating to the merits of the movant's case. Its purpose is identical with that of Section 26-503, and relief under it, as under 26-503, should be granted with liberality.

By judicial interpretation of Section 26-503, *Stepp v. Horton,* 227 S. C. 432, 88 S. E. (2d) 258, *Peagler v. Atlantic Coast Line R. Co.,* 232 S. C. 274, 101 S. E. (2d) 821, and by the express language of Section 26-502, a motion under either is addressed to the discretion of the circuit judge. Accordingly, in the instant case, we may not substitute our judgment for his simply because we might have reached a different conclusion had we been in his place; and our function is limited to inquiry whether the order under appeal resulted from error of law or, if based upon factual considerations, was without adequate evidentiary support. *Simon v. Flowers,* 231 S. C. 545, 99 S. E. (2d) 391. That order, after recital of the history of the case, proceeds as follows:

"The complaint, motion and argument of plaintiff are predicated on the theory of the existence of a trust. Under

the argument of plaintiff's counsel, he would not be entitled to this discovery by this extraordinary process unless and until he has proved prima facie the existence of the trust alleged in the complaint. The defendant, by her answer, expressly denies the existence of any such trust and I do not find that in the circumstances of this case this individual defendant should be required to produce books, records and papers for examination by the plaintiff pursuant to the motion before me."

To be entitled to an order for discovery under Section 26-502 a plaintiff must show, prima facie, that he has a cause of action and that the books, papers and records that he seeks to examine contain evidence relating to the merits of his case and are in the possession or under the control of his adversary. We have held that such proof may be made by verified complaint, with or without additional affidavits. *United States Tire Co. v. Keystone Tire Sales Co.,* 153 S. C. 56, 150 S. E. 347, 66 A. L. R. 1264. In the case at bar the record does not disclose whether or not the complaint was verified; but that is immaterial in view of the supporting affidavits before summarized. That moneys collected by the Timmons Agency within the scope of its agency agreement with Keystone would constitute a trust fund is implicit in the decision on the former appeal, where it was held that the allegations of the complaint with reference to such collections were sufficient to withstand a demurrer based upon Section 19-474 of the Code. Plaintiff's showing in this regard, as well as to the effect that the records that he seeks to examine are pertinent to the merits of his case, is amplified by the affidavits tendered in support of his motion. We think that the prima facie showing thus made clearly entitled him to the order for discovery, and that the circuit court was in error in holding otherwise.

That the Commissioner's affidavit of January 9, 1959, states Mr. Timmons' indebtedness to Keystone at the time of his death as $15,881.70 instead of $25,504.79, the amount stated in the claim as filed in the probate court in 1951 and

as stated in the complaint in 1956, is not material to the issue now involved. The discrepancy between the two figures rather emphasizes the plaintiff's inability to determine the exact amount of the indebtedness from the records of Keystone alone. Nor is it of any consequence that the records of the Timmons Agency may reveal that as the result of his procurement of other insurance for policy holders of Keystone following its receivership Mr. Timmons would have been entitled to an offset against the receiver's claim, as suggested in Mr. Cox's letter to Mr. Walker of October 31, 1958. Respondent argues that in such event the granting of the present motion would result in discovery of matter of defense rather than of matter pertinent to the plaintiff's case; but there is no merit in that position, because respondent has not pleaded offset.

Appellant's showing on the motion was aided, rather than weakened, by the documents offered by respondent in opposition to it. Particularly is this true in regard to the affidavit of Mr. Rodgers, presented by respondent from which it is apparent that the Timmons Agency is still in operation, and that the affiant, who has been in its employ for many years, has concluded, after a study of its records, that only a "small portion" of the ninety-four insurance policies on which appellant's claim is based are "involved under the agency agreement." In the order under appeal the circuit judge states: "It can be added that plaintiff has not made a sufficient showing that the books, records and papers demanded to be produced are in existence and, further, there is no showing whatsoever that the individual defendant, Eva McDonald Timmons, has any such records, documents and papers in her custody and possession." In the light of the Rodgers affidavit, we think that this portion of the order lacks adequate evidentiary support. It is apparent that the records sought to be inspected do exist and are available to the respondent. The statute does not require that they be in her actual custody and possession.

The aim of modern practice and procedure is to concisely frame the issues between the parties and promptly and

clearly present them for judicial determination. Hide-and-seek is not a game for the courts; discovery under Sections 26-502 and 26-503 is no longer to be regarded as an extraordinary process. That the complaint here states a cause of action has already been adjudicated. The case should now proceed to trial on the merits.

Appellant's motion should have been granted. The order appealed from is accordingly reversed.

STUKES, C. J., and TAYLOR and OXNER, JJ., concur.

Moss, J., did not participate.