## 0154

Judith L. Summers HOOK, as Administratrix of the Estate of Jack R. Summers, Appellant, v. Jerry C. ROTHSTEIN, M.D., Respondent.

(316 S. E. (2d) 690)

Court of Appeals

*O. Fayrell Furr, Jr.*, and *Donna K. Holt*, Columbia, *for appellant.*

*David W. Robinson* and *Malcolm E. Rentz*, Columbia, *for respondent.*

*Jeter E. Rhodes, Jr.*, of *Whaley, McCutchen, Blanton & Rhodes*, Columbia, *amicus curiae for South Carolina Medical Ass'n.*

*J. Kendall Few*, Greenville, *amicus curiae for South Carolina Trial Lawyers Ass'n.*

April 16, 1984.

GOOLSBY, Judge:

In this wrongful death action brought by Judith L. Summers Hook, as Administratrix of the Estate of Jack R. Summers, against Jerry C. Rothstein, M.D., the principal question on appeal concerns the test of liability in a medical malpractice case involving informed consent. Judgment was entered for the defendant physician following a jury verdict in his favor. The plaintiff administratrix appeals. We affirm.

In December 1971, the intestate Jack Summers began to suffer stomach pains. His family doctor placed him on mylanta and a bland diet. Because the pains persisted, he underwent an upper and lower gastro-intestinal series. These tests revealed what appeared to be a mass or tumor in his lower intestines. After consultation with Dr. Rothstein, a radiologist, and with a family doctor and a surgeon, it was determined that the next diagnostic step was for Mr. Summers to undergo an intravenous pyelogram (IVP).

An IVP is a procedure in which a contrast material composed of an iodine compound is injected into a patient's vein so

that the kidneys and ureters can be outlined on x-ray film. *See* 1 D. Louisell & H. Williams, *Medical Malpractice* § 2.10 n. 36, at 35 (1983). Death can result from a severe reaction to the contrast material. Patients with a history of either asthma or allergies have a greater risk of reaction to the IVP contrast material than patients who have neither asthma nor allergies; however, there is no evidence that the former suffer more *fatal* reactions than the latter. The frequency of fatal reactions is one in 40,000.

On January 24, 1972, Mr. Summers reported to the X-Ray Department at the Lexington County Hospital for Dr. Rothstein to perform the IVP. Dr. Rothstein asked Mr. Summers whether he suffered from any allergies. Although he had a long history of allergies, Mr. Summers did not tell Dr. Rothstein about it. Dr. Rothstein, however, did not inform Mr. Summers about the possibility of a fatal reaction. His experience and training had convinced him that patient apprehension plays a significant role in reactions to the contrast material. Shortly after the procedure began, Mr. Summers suffered a severe reaction and died.

This action was commenced nearly six years later. In an amended complaint, the failure of Dr. Rothstein to inform Mr. Summers of "the risks associated with the IVP procedure" was characterized as "a wilful and wanton act of negligence" and was alleged to be the proximate cause of Mr. Summers' death. A subsequent granting of summary judgment to the appellant was reversed by the Supreme Court. *Hook v. Rothstein,* 275 S. C. 187, 268 S. E. (2d) 288 (1980).

■ Under the doctrine of informed consent, it is generally held that a physician who performs a diagnostic, therapeutic, or surgical procedure has a duty to disclose to a patient of sound mind, in the absence of an emergency that warrants immediate medical treatment, (1) the diagnosis, (2) the general nature of the contemplated procedure, (3) the material risks involved in the procedure, (4) the probability of success associated with the procedure, (5) the prognosis if the procedure is not carried out, and (6) the existence of any alternatives to the procedure. *See* 2 D. Louisell & H. Williams, *supra* § 22.01. The basis of the doctrine is the patient's right to exercise control over his or her own body by deciding intelligently for himself or herself

whether or not to submit to the particular procedure. *Sard v. Hardy*, 281 Md. 432, 379 A. (2d) 1014, 1019 (1977); 61 Am. Jur. (2d) *Physicians, Surgeons, and Other Healers* § 187, at 318 (1981).

Neither the appellant nor Dr. Rothstein directed our attention to any case in South Carolina which expressly recognizes the doctrine of informed consent. Our own research likewise did not disclose the existence of any such case. So far, however, only Georgia has expressly refused to accord the doctrine any degree of recognition. *See Butler v. Brown*, 162 Ga. App. 376, 290 S. E. (2d) 293 (1982); *Parr v. Palmyra Park Hospital, Inc.*, 139 Ga. App. 457, 228 S. E. (2d) 596 (1976); *McMullen v. Vaughan*, 138 Ga. App. 718, 227 S. E. (2d) 440 (1976). In making no contention that the doctrine would not be recognized in this state, Dr. Rothstein implicitly acknowledges its existence. That acknowledgment, we think, is a proper one. *See* 61 Am. Jur. (2d) *Physicians, Surgeons, and Other Healers* § 187, at 316-17 (1981); 2 D. Louisell & H. Williams, *supra* § 22.01; *cf. Hook v. Rothstein, supra.*

Several exceptions asserted by the appellant, either directly or indirectly, relate to the standard by which to measure the duty on the part of a physician to inform his or her patient of risks inherent in proposed medical treatment. Presently, there are two major standards. One is the professional medical standard, sometimes referred to as the traditional standard; and the other is the lay standard, sometimes referred to as either the materiality of risk or prudent patient standard. *See* 61 Am. Jur. (2d) *Physicians, Surgeons, and Other Healers* §§ 188-189 (1981); 2 D. Louisell & H. Williams, *supra* § 22.05, at 22-13; *see also Woolley v. Henderson*, 418 A. (2d) 1123, 1128-29 (Me. 1980). The appellant maintains that the proper criterion is the lay standard.

Under the professional standard, the physician is required to disclose those risks which a reasonable medical practitioner of like training would disclose under the same or similar circumstances. *See, e.g., Woolley v. Henderson*, 418 A. (2d) at 1129; *Thomas v. Berrios*, 348 So. (2d) 905 (Fla. App. 1977). In most cases, the questions of whether and to what extent a physician has a duty to disclose a particular risk are to be determined by expert testimony which establishes the

prevailing standard of practice and the physician's departure from that standard. *See, e.g., Folger v. Corbett,* 118 N. H. 737, 394 A. (2d) 63, 64 (1978); *Bly v. Rhoads,* 216 Va. 645, 222 S. E. (2d) 783, 787 (1976).

On the other hand, under the lay standard the physician's disclosure duty is to be measured by the patient's need for information rather than by the standards of the medical profession. *Woolley v. Henderson,* 418 A. (2d) at 1129. Unlike the professional standard, the lay standard does not ordinarily require expert testimony as to medical standards to establish the physician's duty to disclose; rather, it is for the jury to determine whether a reasonable person in the patient's position would have considered the risk significant in making his or her decision. *See, e.g., Miller v. Kennedy,* 11 Wash. App. 272, 522 P. (2d) 852, 863 (1974), *aff'd per curiam,* 85 Wash. (2d) 151, 530 P. (2d) 334 (1975); *Wilkinson v. Vesey,* 110 R. I. 606, 295 A. (2d) 676, 688 (1972). Medical testimony, however, may be required to establish the undisclosed risk as a known danger of the procedure. *Woolley v. Henderson,* 418 A. (2d) at 1129; *see* 2 D. Louisell & H. Williams, *supra* § 22.09.

There is neither a statute nor a Supreme Court decision which prescribes the standard in this state by which to measure a physician's duty to disclose the material risks inherent in a proposed medical procedure. In order for us to pass upon several of the appellant's exceptions, it is necessary, therefore, that we first determine what the standard in South Carolina should be.

The Supreme Court's previous opinion in this case does not aid our determination because no indication as to which standard the Supreme Court favors can be drawn from its holding. Before, the Supreme Court simply reversed summary judgment in the appellant's favor because affidavits tendered by Dr. Rothstein regarding the disclosure practices of area radiologists were viewed by the Supreme Court as creating a genuine issue of material fact as to the question of liability. *Hook v. Rothstein, supra.* Of course, where the professional standard is employed, evidence of a medical custom is ordinarily of paramount importance with regard to the issue of liability [*see, e.g., Fuller v. Starnes,* 268 Ark. 476, 597 S. W. (2d) 88, 90 (1980)]; however, such evidence can also be considered in determining liability where the lay standard is used. *See, e.g., Wilkinson v. Vesey, supra.*

The greater number of the jurisdictions in this country follow the professional standard. *See* Annot., 88 A.L.R. (3d) 1008, 1012 (1978); *see, also Riedisser v. Nelson,* 111 Ariz. 542, 534 P. (2d) 1052 (1975); *Fuller v. Starnes, supra; Coleman v. Garrison,* 327 A. (2d) 757 (Del. Super. 1974), *aff'd,* 349 A. (2d) 8 (1975); *Brown v. Wood,* 202 So. (2d) 125 (Fla. App. 1967); *Nishi v. Hartwell,* 52 Haw. 188, 473 P. (2d) 116 (1970); *Ziegert v. South Chicago Community Hospital,* 99 Ill. App. (3d) 83, 54 Ill. Dec. 585, 425 N. E. (2d) 450 (1981); *Tatro v. Lueken,* 212 Kan. 606, 512 P. (2d) 529 (1973); *Woolley v. Henderson, supra; Marchlewicz v. Stanton,* 50 Mich. App. 344, 213 N. W. (2d) 317 (1973); *Ross v. Hodges,* 234 So. (2d) 905 (Miss. 1970); *Cress v. Mayer,* 626 S. W. (2d) 430 (Mo. App. 1981); *Llera v. Wisner,* 171 Mont. 254, 557 P. (2d) 805 (1976); *Folger v. Corbett, supra; Moore v. Underwood Memorial Hospital,* 147 N. J. Super. 252, 371 A. (2d) 105 (1977); *Bulter v. Berkeley,* 25 N. C. App. 325, 213 S. E. (2d) 571 (1975); *German v. Nichopoulos,* 577 S. W. (2d) 197 (Tenn. App. 1978); *Wilson v. Scott,* 412 S. W. (2d) 299 (Tex. 1967); *Bly v. Rhoads, supra; Stundon v. Stadnik,* 469 P. (2d) 16 (Wyo. 1970). Almost as many jurisdictions adhere to the lay standard. *See* Annot., *supra* at 1034; *see also Cobbs v. Grant,* 8 Cal. (3d) 229, 104 Cal. Rptr. 505, 502 P. (2d) 1 (1972); *Logan v. Greenwich Hospital Ass'n.,* 191 Conn. 282, 465 A. (2d) 294 (1983); *Canterbury v. Spence,* 464 F. (2d) 772 (D. C. Cir. 1972), *cert. denied,* 409 U. S. 1064, 93 S. Ct. 560, 34 L. Ed. (2d) 518 (1972); *Revord v. Russell,* 401 N. E. (2d) 763 (Ind. App. 1980); *Percle v. St. Paul Fire and Marine Ins. Co.,* 349 So. (2d) 1289 (La. App. 1977); *cert. denied,* 350 So. (2d) 1218 (La. 1977); *Sard v. Hardy, supra; Harnish v. Children's Hospital Medical Center,* 387 Mass. 152, 439 N. E. (2d) 240 (1982); *Cornfeldt v. Tongen,* 295 N. W. (2d) 638 (Minn. 1980); *Gerety v. Demers,* 92 N. M. 396, 589 P. (2d) 180 (1978); *Congrove v. Holmes,* 37 Ohio Misc. 95, 66 Ohio Op. (2d) 295, 308 N. E. (2d) 765 (1973); *Scott v. Bradford,* 606 P. (2d) 554 (Okl. 1980); *Getchell v. Mansfield,* 260 Or. 174, 489 P. (2d) 953 (1971); *Cooper v. Roberts,* 220 Pa. Super. 260, 286 A. (2d) 647 (1971); *Wilkinson v. Vesey, supra; Miller v. Kennedy, supra; Cross v. Trapp,* 294 S. E. (2d) 446 (W. Va. 1982); *Trogun v. Fruchtman,* 58 Wis. (2d) 596, 207 N. W. (2d) 297 (1973). At least one court has formulated a hybrid standard. *See Hamilton v. Hardy,* 37 Colo. App. 375, 549 P. (2d) 1099 (1976). Two states, New York and Vermont, adopted the

professional standard by statute after having earlier adopted the lay standard by case law. *See* N. Y. Civ. Prac. Law and Rules § 4401-a (McKinney Supp. 1983); Vt. Stat. Ann. tit. 12, § 1909(a)(1) (Cum. Supp. 1983); *Small v. Gifford Hospital,* 133 Vt. 552, 349 A. (2d) 703 (1975); *see also Logan v. Greenwich Hospital Ass'n.,* 465 A. (2d) at 300. We think that the better standard is the professional standard. *See* Plant, *The Decline of "Informed Consent,"* 35 Wash. & Lee L. Rev. 91, 95-100 (1978); *see also Woolley v. Henderson,* 418 A. (2d) at 1130-31; *Bly v. Rhoads,* 222 S. E. (2d) at 786-88; 2 D. Louisell & H. Williams, *supra* § 22.06, at 22-15.

An informed consent action is no different from any ██ other action for professional malpractice. Underlying every medical malpractice action is the basic principle that the physician departed from a standard of reasonable medical care. *Aiken v. Clary,* 396 S. W. (2d) 668, 673 (Mo. 1965). As in other cases involving medical practice, "[w]hen a patient alleges that an unrevealed hazard has caused him injury, the jury must determine whether, under the facts of the case, the physician has deviated from the standard of care of the reasonable practitioner." *Woolley v. Henderson,* 418 A. (2d) at 1130. Because the question of whether the physician has acted unreasonably often involves the exercise of medical judgment, we feel that, in most cases, expert medical testimony is just as necessary to establish negligence in failing adequately to disclose as it is to prove negligence in failing to treat or diagnose properly. *Id.; Aiken v. Clary,* 396 S. W. (2d) at 674. Indeed, our Supreme Court has held that in any "area beyond the realm of ordinary lay knowledge, expert testimony will usually be necessary to establish both the standard of care and the defendant's departure therefrom." *Kemmerlin v. Wingate,* 274 S. C. 62, 261 S. E. (2d) 50, 51 (1979).

The most glaring weakness associated with the lay standard is the notion "that the decision as to risk disclosure is a nonmedical one and can be appraised by the jury without the aid of, or in opposition to, expert evidence." *See* Plant, *supra* at 96. We agree with the view expressed by the Missouri Supreme Court in *Aiken v. Clary, supra,* that the decision as to risk disclosure is a medical question. No court that has adopted the lay standard has effectively challenged, to our knowledge, the following statement taken from *Aiken:*

The question is not what, regarding the risk involved, the *juror* would relate to the patient under the same or similar circumstances, or even what a reasonable *man* would relate, but what a reasonable *medical practitioner* would do. Such practitioner would consider the state of the patient's health, the condition of his heart and nervous system, his mental state, and would take into account, among other things, whether the risks involved were mere remote possibilities or something which occurred with some sort of frequency or regularity. *This determination involves medical judgment* as to whether disclosure of possible risks may have such an adverse effect on the patient as to jeopardize success of the proposed therapy, no matter how expertly performed. . . . After a consideration of these and other proper factors, a reasonable medical practitioner, under some circumstances, would make full disclosure of all risks which had any reasonable likelihood of occurring, but in others the facts and circumstances would dictate a guarded or limited disclosure. In some cases the judgment would be less difficult than in others, but, *in any event, it would be a medical judgment.* [Some emphasis added.]

396 S. W. (2d) at 674-75.

When the Virginia Supreme Court was urged to adopt the lay standard, which it referred to as the "modern trend rule," the court wrote as it declined to take that course:

The matters involved in the disclosure syndrome, more often than not, are complicated and highly technical. To leave the establishment of such matters to lay witnesses, in our opinion, would pose dangers and disadvantages which far outweigh the benefits and advantages a "modern trend" rule would bestow upon patient-plaintiffs. In effect, the relaxed "modern trend" rule permits lay witnesses to express, when all is said and done, what amounts to medical opinion.

*Bly v. Rhoads*, 222 S. E. (2d) at 787. And as Justice Hansen observed in his spirited dissent in *Scaria v. St. Paul Fire and Marine Ins. Co.*, 68 Wis. (2d) 1, 227 N. W. (2d) 647, 659 (1975), "Children play at the game of being doctor but judges and juries ought not."

The physician's chief concern when treating a patient should be the patient's best interests and not what a lay jury, untrained in medicine and employing perfect hindsight, might later conclude he or she should have disclosed. *Id.* The North Carolina Supreme Court expressed a similar thought in *Starnes v. Taylor*, 272 N. C. 386, 158 S. E. (2d) 339, 344 (1968). *Viz:*

> [M]uch must be left to the discretion of the physician . . . in determining what he [or she] should tell the patient as to possible adverse consequences. While the patient, or the person acting for him [or her], has the right to an informed election as to whether to undergo the proposed operation, treatment or to take a prescribed drug, it must be borne in mind that the physician's . . . primary concern at the time of the consultation is, and should be, the treatment of the patient's illness or disability, not preparation for the defense of a possible law suit.

*See also Bulter v. Berkeley*, 213 S. E. (2d) at 581-82.

We therefore reject the lay standard and hold that the ██ scope of a physician's duty to disclose is measured by those communications a reasonable medical practitioner in the same branch of medicine would make under the same or similar circumstances. We also hold that the plaintiff must ordinarily establish this standard by expert medical evidence. *Woolley v. Henderson*, 418 A. (2d) at 1131.

Having determined that the professional standard is the standard by which to measure the duty of a physician to inform a patient of the material risks inherent in a proposed treatment or procedure, we turn to the appellant's specific exceptions. Before addressing them, however, some comment about the appellant's exceptions and her brief is appropriate.

Our determination of the various issues presented by this appeal has been made exceedingly more difficult because of the appellant's failure to comply with Supreme Court Rule 4, § 6[1] and because she failed to address specifically most of the

---

[1] Supreme Court Rule 4, § 6 provides in part as follows:
Each exception must contain a concise statement of one proposition of law or fact which this Court is asked to review. . . . Each exception must contain within itself a complete assignment of error, and a mere reference therein to any . . . request to charge will not be considered.

26 exceptions on which she bases her appeal. Her brief, while well-written, is little more than a wide-ranging treatise in support of her position on the subject of informed consent generally.

Exception Nos. 10, 11, 12, 14, and 18 violate Rule 4, § 6 because they each contain more than one proposition of law which this court is asked to review.[2] They also violate the rule, as do Exception Nos. 13, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25 and 26, because they each make "a mere reference therein to . . . [a] request to charge." Exception No. 13 further violates the rule in that it omits to include the proposition of law which this court is requested to review. *See State v. Cater*, 241 S. C. 262, 127 S. E. (2d) 882 (1962) (where exception merely referred to a request to charge); *Stockman v. Marlowe*, 271 S. C. 334, 247 S. E. (2d) 340 (1978) (where exception contained more than one proposition for review).

The appellant professed to argue in her brief all of her exceptions save Nos. 4, 14, 25 and 26. Exceptions not argued in the appellant's brief are deemed abandoned. *State v. Vaughn*, 268 S. C. 119, 232 S. E. (2d) 328 (1977). We therefore will not discuss these four exceptions and the issues they raise.

It is not clear to us whether the appellant, as she claimed to do, argued in her brief Exception Nos. 1, 2, 3, 7, 8, 9, 10, 11, 12, 13, 16, 19, 20 and 21 under Question I, Exception Nos. 16 and 18 under Question II, and Exception Nos. 5, 6, 22, and 24 under Question III; however, due to the gravity of the case and the importance of the basic issue, we have elected to treat each exception not plainly appearing to have been abandoned on account of a failure to argue it. *Pacific Insurance Co. of N. Y. v. Fireman's Fund Insurance Co.*, 247 S. C. 1, 221 S. E. (2d) 102 (1975); *State v. Griggs*, 184 S. C. 304, 192 S. E. 360 (1937). We prefer not to dispose of cases on technical grounds. *Baker v. Weaver*, 309 S. E. (2d) 770 (S. C. App. 1983); *cf. Lawson v. Mills*, 259 S. C. 308, 191 S. E. (2d) 637 (1972).

---

[2] For example, Exception No. 10 reads:
The Trial Court erred in granting Defendant's request to charge numbers 1, 2 and 4 because the skill and care with which a procedure is carried out and the medical judgment of the doctor are not at issue in an informed consent case.

## 1. Exception Nos. 1, 2, and 3

The appellant contends that the trial judge erred in denying her motion to require Dr. Rothstein to respond to her request for admissions within a shorter time than Circuit Court Rule 89 prescribes. This action was commenced on January 20, 1978, and the trial of the case commenced on November 4, 1980, nearly three years later; however, it was not until October 24, 1980, just eleven days prior to trial, that the request for admissions and the motion to shorten the response time were served.

The rulings of a trial judge in matters involving discovery will not be disturbed on appeal absent a clear showing of an abuse of discretion. *See* 5A C.J.S. *Appeal & Error* § 1594 (1958); *cf. Wallace v. Timmons*, 237 S. C. 411, 117 S. E. (2d) 567 (1960). No such showing has been made here. Under the circumstances of this case, the showing would necessarily have included a convincing explanation of why the appellant waited until the eve of trial to serve the request and motion when the cause had been pending for almost three years. The trial judge's refusal to shorten the time within which to respond to a request for admissions, therefore, provides no basis for a reversal of the judgment below.

## 2. Exception Nos. 5 and 6

The appellant asserts error on the part of the trial judge in excluding from the evidence the testimony of two witnesses, J. D. Mangum and Jerry Crawford. The appellant claims that the evidence which she sought to introduce through their testimony was relevant to the issue of causation.

Both witnesses would have testified that they themselves had undergone the IVP procedure and suffered reactions. They would have also testified that they were not told of any risk associated with the procedure and that they would have refused the procedure had they known a person could possibly suffer a fatal reaction. The trial judge disallowed their testimony because he deemed it irrelevant and because opposing counsel was not timely notified that they would be called as witnesses.

The appellant failed to except to the exclusion of the witnesses' testimony on the latter ground. Even if she had done so, the record does not show that the trial

judge abused his discretion in refusing to permit their testimony. *Reed v. Clark*, 277 S. C. 310, 286 S. E. (2d) 384 (1982).

In any case, the exclusion of evidence at trial is addressed to the sound discretion of the trial judge. The exercise of his discretion will not be disturbed on appeal absent a showing that the trial judge abused his discretion, committed legal error in its exercise, and prejudiced the appellant's rights. *S. C. State Highway Department v. Rural Land Co.*, 250 S. C. 12, 156 S. E. (2d) 333 (1967); *Cudd v. John Hancock Mutual Life Ins. Co.*, 310 S. E. (2d) 830 (S. C. App., 1983); *see also Wright v. Public Savings Life Ins. Co.*, 262 S. C. 285, 204 S. E. (2d) 57 (1974). No such showing has been made here. Moreover, whether or not Mr. Mangum and Mrs. Crawford would undergo the procedure now that they know that death can possibly result from it had no bearing on what a reasonable person who was in the deceased's position and who had never undergone the test would have done. Their testimony was properly excluded.

### 3. Exception Nos. 7 and 8

The appellant maintains that the trial court erred in excluding the testimony of Grace Mayer as to the practice of *nurses* in obtaining informed consent from hospital patients. Her testimony was excluded because she was not a physician and, therefore, was not qualified to describe the practice of radiologists in obtaining informed consent from patients about to undergo the IVP procedure.

As we have said, the rejection of evidence is largely within the sound discretion of the trial judge. To warrant a reversal, an abuse of discretion amounting to a manifest error of law must be demonstrated. *Grand Strand Construction Co., Inc. v. Graves*, 269 S. C. 594, 239 S. E. (2d) 81 (1977); *see also S. C. State Highway Dept. v. Rural Land Co., supra; Cudd v. John Hancock Mutual Life Ins. Co., supra.* We note that Mrs. Mayer's name does not appear anywhere in the appellant's brief and that there is absolutely no mention of her proffered testimony in the brief. (Her testimony, however, is discussed somewhat in the appellant's reply brief.) We will not disturb, therefore, the trial judge's ruling with regard to Mrs. Mayer's testimony. The appellant has not demonstrated to our satisfaction that the trial judge abused his

discretion in excluding it. In fact, we agree with the trial judge that the evidence lacked probative value. Her practice as a nurse had no relevance whatever to the standard of care among practicing radiologists.

### 4. Exception No. 9

The appellant challenges on the basis of relevancy the trial judge's admission in evidence of the testimony from Dr. Hoyt Bodie concerning the standard disclosure practice of radiologists in the Columbia area with regard to the IVP procedure.

Nowhere in her brief does the appellant try to explain why the testimony of Dr. Bodie was irrelevant. The admission of evidence is likewise largely within the discretion of the trial judge. As with the exclusion of evidence, the exercise of discretion in admitting evidence will not be reversed by the Court of Appeals unless there is a clear showing of an abuse of discretion, the commission of legal error in its exercise, and prejudice to a right of the appellant. *S. C. State Highway Dept. v. Rural Land Co., supra; Cudd v. John Hancock Mutual Life Ins. Co., supra.* The appellant has not shown any abuse of discretion, legal error, and prejudice. In any event, Dr. Bodie's testimony was clearly admissible on the issue of what a reasonable physician would have disclosed under the same or similar circumstances. *See, Woolley v. Henderson,* 418 A. (2d) at 1131; *cf. Hook v. Rothstein, supra.*

### 5. Exception No. 24

The appellant contends that the trial judge erred in not instructing the jury as requested to the effect that a physician is absolutely liable for any injury resulting from a harm about which the patient was not informed because a failure to inform would operate to invalidate the consent theretofore given by the patient. Apparently, it is the appellant's position that an informed consent case involves a battery.

First of all, a trial judge is under no obligation to instruct a jury as to any issue not raised by the pleadings and the evidence. *Baker v. Weaver, supra.* In this instance, the complaint charges Dr. Rothstein with negligence. There are no allegations involving a battery. The pleadings, therefore, did not warrant the charge.

Second, because an informed consent action is based on a failure by a physician to make proper disclosure when obtaining consent from a patient and is concerned with the issue of whether the physician departed from the standard of care of the reasonable medical practitioner, the action, we think, is one which properly belongs to the negligence theory. 2 D. Louisell and H. Williams, *supra* § 22.02, at 22-3 to 22-4. "The gist of the action for battery is . . . the absence of consent to . . . contact on the part of the plaintiff." W. Prosser, *Law of Torts* § 9, at 36 (4th ed. 1971). Thus, the battery theory is applicable either where the physician performs a procedure to which the patient has not consented or where the patient gives permission to perform one type of procedure and the physician performs another. *Cobbs v. Grant*, 502 P. (2d) at 8; *see also, e.g., Hively v. Higgs*, 120 Or. 588, 253 P. 363 (1927) (where a patient consented to a nose operation and the surgeon removed her tonsils instead). The battery theory has no application where the patient gives his or her consent to a particular procedure and an undisclosed inherent complication with a low probability occurs when the physician undertakes to perform it. *Cobbs v. Grant*, 502 P. (2d) at 8. The trial judge was right to reject the requested instruction.

### 6. Exception Nos. 10 and 11

The appellant complains about the granting by the trial judge of four requests to charge submitted by Dr. Rothstein. We find that the requests either embraced or related to the proper standard by which to measure a physician's duty to inform.[3] All were bottomed on the profes-

---

[3] The requests to charge were as follows:

No. 1

In her alleged Cause of Action, plaintiff charges defendant with what is generally referred to as medical malpractice; and, in that connection, I charge you that a qualified physician or surgeon does not guarantee or insure the correctness or safety of his treatment, and ordinarily he is not responsible for any adverse consequences of treatment if he uses the requisite degree of skill and care. Generally stated, a qualified physician or surgeon is not liable for an error or mistake in judgment if he applies ordinary and reasonable skill and care, keeps within recognized and approved methods, and forms his judgment after a careful and proper examination or investigation, in light of the knowledge possessed by the medical profession at the time he renders the services. He is not charged with the duty of omniscience and ordinarily is not an insurer. In order to

sional standard. The trial judge, therefore, did not err in charging them.

## 7. Exception No. 20

The appellant charges the trial judge with error in refusing a requested instruction that set forth the lay standard for measuring a physician's duty to disclose material risks to his or her patient. The trial judge properly rejected the proffered instruction since we have held today that the scope of a physician's duty to inform is to be measured by the professional standard and not by the lay standard.

## 8. Exception No. 19

The appellant seeks our review of the trial judge's refusal to charge her request regarding a physician's duty to obtain an informed consent from a patient before proceeding with treatment. Any error in the trial court's failure to charge the requested instruction was not prejudicial because the instructions given to the jury in the general charge afforded a proper test for determining the

afford a basis for an action for malpractice, the want of skill or care must be proven by a preponderance of the evidence and must also be a proximate cause of the injury to or death of the patient.

### No. 2

A physician or surgeon who undertakes to render professional services must meet these requirements: (1) he must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess at the time and in the community where he renders the services; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's care; and (3) he must use his best judgment in the treatment and care of his patient. If the physician or surgeon lives up to the foregoing requirement he is not civilly liable for the consequences. If he fails in any of those particulars, and such failure is the proximate cause of injury and damage, he is liable.

### No. 3

In order to fashion liability in a malpractice case, it is necessary that the plaintiff prove, by a preponderance of the evidence, the following: (1) the recognized standard of medical care in the community which would be exercised by a physician in the same specialty under similar circumstances; and (2) [t]hat the physician departed from that standard in his treatment of plaintiff. [Citations omitted.]

### No. 4

I charge you that a physician or surgeon who undertakes to render professional services must comply with a standard requiring reasonable

issues.[4] *See Brave v. Blakely*, 250 S. C. 353, 157 S. E. (2d) 726 (1967).

### 9. Exception No. 12

The appellant alleges error on the part of the trial judge in modifying two of her requests to charge by deleting certain portions of both requests. The first of these requests related to the right of a person to make his or her own decision as to what will be done with or to his or her own body. The other request concerned the nature of the relationship between a patient and a physician.

The trial judge deleted from the first request language ▇▇▇ to the effect that a physician has no right either to compel a patient to accept treatment or to induce a patient to undergo treatment by minimizing the risks involved. Because the appellant failed to show how the modification prejudiced her, there is no basis for reversal. A party cannot complain of a modification of a request to charge where the modification was not prejudicial. *Bowen v. Southern Ry. Co.*, 58 S. C. 222, 36 S. E. 590 (1900). If there was

care and competence. Reasonable care and competence in this context means that he will render his services with that degree of skill, care, knowledge, and judgment usually possessed and exercised by members of that profession in the particular locality, in accordance with accepted professional standards. Because this is an area beyond the realm of ordinary lay knowledge, expert testimony usually will be necessary to establish both the standard of care and the physician's or surgeon's departure therefrom. [Citation omitted.]

The appellant's exceptions do not reach any issue regarding the "locality" rule. The Supreme Court recently held that local practice is but one factor to be considered in determining the degree of care required of a physician. *See King v. Williams*, 276 S. C. 478, 279 S. E. (2d) 618 (1981).

---

[4] The trial judge instructed the jury as follows:

The doctrine of informed consent is based on the general principle that a physician has a duty adequately to disclose to his patient the proposed diagnostic, therapeutic or surgical procedure to be undertaken, the material risks involved therein and the alternatives available, if any, so that a patient of ordinary understanding confronted with these disclosures, and faced with a choice of undergoing the proposed treatment or selecting an alternative process or preferring refusal of all medical relief, may in reaching a decision intelligently exercise his judgment by balancing the probable risks against the probable benefits.

evidence in the record that Dr. Rothstein sought either to compel or to unfairly induce the deceased to undergo the IVP procedure, the appellant omitted to point it out to us. We discern no error, then, in the trial judge's modification of the request. No instruction should be given which tenders an issue not raised by the pleadings and evidence. *Baker v. Weaver*, 309 S. E. (2d) at 773 (Cureton, J. concurring).

With regard to the other request, the trial judge did not delete a single word of it when instructing the jury. The exception, therefore, clearly has no merit.

### 10. Exception No. 13

The appellant maintains that the trial judge also erred in modifying her request to charge as to the right of a patient to make his or her own decision about what will be done with his or her body because he added language which stated in effect that a physician's duty to inform a patient of material risks is governed by the professional standard. Since we have held that the lay standard is not the standard in South Carolina by which to measure a physician's disclosure duty, the trial judge did not err in modifying the requested instruction to include a reference to a physician's disclosure duty under the professional standard.

### 11. Exception No. 21

The appellant assigns error on the part of the trial judge in refusing to instruct the jury that whenever a "procedure inherently involves a known risk of [either] death or serious bodily harm" the physician has a duty to disclose the risk to the patient.

The extent of disclosure is ordinarily a medical judgment. *Stauffer v. Karabin*, 30 Colo. App. 357, 492 P. (2d) 862, 865 (1971); *Starnes v. Taylor*, 158 S. E. (2d) at 344. "[T]he doctrine of informed consent does not require the physician to risk frightening the patient away from treatment which sound medical judgment indicates is necessary...." 61 Am. Jur. (2d) *Physicians, Surgeons, and Other Healers* § 190, at 321 (1981). The physician is not ordinarily required to disclose the risk to the patient "where the statistical risk is remote and the severity not great." 2 D. Louisell & H. Williams, *supra* § 22.13, at 22-34.

In our view, the trial judge in his general charge satisfactorily instructed the jury as to the basic guidelines it was to follow in determining what risks need to be disclosed.[5] The trial judge's refusal, therefore, to give the requested instruction did not constitute prejudicial error. *See Brave v. Blakely, supra.*

### 12. Exception No. 17

The appellant claims the trial judge erred in not instructing the jury that the burden is upon the physician in an informed consent case to show by a preponderance of the evidence that circumstances existed which justified the withholding of risk information. We disagree.

Under certain circumstances, the disclosure of risks is unnecessary. One such circumstance is where the physician reasonably believes that a complete and candid disclosure of possible consequences might have a detrimental effect on the physical or psychological well-being of the patient. *See* 61 Am. Jur. (2d) *Physicians, Surgeons, and .Other Healers* § 191, at 322 (1981).

We know of no case which holds, and the appellant cites none, that where the professional standard is employed the physician must prove by the greater weight of the evidence that full disclosure would have induced an adverse reaction. As we indicated previously, the burden is upon the plaintiff in an informed consent case to prove, ordinarily by

---

[5] The trial judge told the jury:

[A] physician may be under an obligation to make known to his patient what are the known risks or .dangers inherent in the treatment that has been proposed, so that the patient will then be in a position to make an intelligent decision as to whether he will submit to the course the physician proposes to take.

. . . .

The risks which a physician may be bound to disclose to the patient are those risks which are material to the proposed procedure. A risk is material if a reasonable person, in the patient's position, would attach significance to it in deciding whether or not to submit to the proposed treatment or procedure. If the potential injury greatly outweighs the potential benefit to be gained from the procedure, this might be a material and significant factor which the patient would be entitled to know before giving his consent to the procedure.

As the probability or severity of risks to the patient increases, then the duty of the physician to inform the patient of these risks increases.

expert medical testimony, that a reasonable physician of the same branch of medicine as the defendant would have disclosed the risks under the same or similar circumstances.

> Whether the physician has acted unreasonably is often a question of professional judgment. In determining whether and how much he [or she] should disclose, the physician must consider the probable impact of disclosure on the patient, taking into account his [or her] peculiar knowledge of the patient's psychological, emotional and physical condition, and must evaluate the magnitude of risk, the frequency of its occurrence and the viability of alternative therapeutic measures. *See, e.g., Patrick v. Sedwick,* 391 P. (2d) 453, 458 (Alas. 1964); *Grosjean v. Spencer,* 258 Iowa 685, 692-95, 140 N. W. (2d) 139, 144-45 (1966). "This determination involves medical judgment as to whether disclosure of possible risks may have such an adverse effect on the patient as to jeopardize success of the proposed therapy, no matter how expertly performed." *Aiken v. Clary,* 396 S. W. (2d) 668, 674 (Mo. 1965). [Footnote omitted.] Conceivably, full disclosure under some circumstances could constitute bad medical practice. *Collins v. Meeker,* 198 Kan. 390, 397, 424 P. (2d) 488, 495 (1967); *see* McCoid, *The Care Required of Medical Practitioners, in Professional Negligence* 13, 60-61 (T. Roady & W. Anderson ed. 1960).

*Woolley v. Henderson,* 418 A. (2d) at 1130.

### 13. Exception Nos. 15, 16, and 18

The trial judge is charged with error in refusing to instruct the jury that the therapeutic privilege does not allow a physician to withhold risk information because the physician feels the information might prompt the patient to forego treatment. The appellant has not shown that the requested instruction was warranted by the evidence. *See Baker v. Weaver, supra.* There is absolutely no evidence in the record that Dr. Rothstein failed to advise Mr. Summers of all known risks because of a concern that the latter might refuse treatment. To the contrary, Dr. Rothstein's testimony was that he refused to advise of all known risks because he was afraid Mr. Summers would still undergo treatment and that

the resulting anxiety would cause a reaction. Any charge on the subject of the physician's concern about the patient refusing treatment would have been improper under the facts of this case. The appellant, then, has demonstrated no prejudice in the trial judge's refusal to charge the requested instruction; and "[w]here it cannot be said that the appellant was ... prejudiced thereby, the refusal of a timely request for proper instructions will [not] necessitate a reversal." 5A C.J.S. *Appeal & Error* § 1774, at 1264 (1958).

### 14. Exception Nos. 22 and 23

By two requests to charge, the appellant sought instructions from the court that the burden of proof as to causation in an informed consent case shifts to the physician if the patient establishes that the physician was negligent in not informing the patient of the risks of the procedure and that causation is established if there was "a substantial possibility" that the patient would have refused the procedure had he or she been told of the risks. The trial judge rejected both requests. The appellant alleges that it was error for the trial judge to do so. We do not agree.

In a professional negligence action, the burden of proving proximate cause rests upon the plaintiff. *Kemmerlin v. Wingate, supra.* The rule is no different where the claim involves a failure by a physician to advise the plaintiff of a danger incident to a proposed medical procedure. 2 D. Louisell & H. Williams, *supra* § 22.11, at 22-27. There is no requirement in an informed consent case that the physician establish by a preponderance of the evidence that the failure to inform was *not* the cause of the injury which resulted. *See Woolley v. Henderson,* 418 A. (2d) at 1132; *Aiken v. Clary,* 396 S. W. (2d) at 676; *see also* 61 Am. Jur. (2d) *Physicians, Surgeons, and Other Healers* § 196 (1981). It is for the plaintiff to show that the undisclosed risk materialized and caused him or her injury and that had the plaintiff been informed he or she would not have submitted to the procedure or treatment. *Riedisser v. Nelson,* 111 Ariz. 542, 534 P. (2d) at 1052, 1055 (1975); *Downer v. Veilleux,* 322 A. (2d) 82, 92 (Me. 1974).

As to the appellant's other complaint regarding the trial court's rejection of the two requests, we gather that she argues that causality is to be judged by a test other than a

subjective test — whether the particular patient would have undergone the treatment or procedure had adequate disclosure been made, or an objective test — whether a reasonable person in the patient's position would have submitted to the treatment or procedure had he or she been adequately informed. *See Woolley v. Henderson*, 418 A. (2d) at 1132; *see also* 61 Am. Jur. (2d) *Physicians, Surgeons and Other Healers* § 196 (1981). She suggests a "hybrid" test — whether "there is a substantial possibility that [the patient] would have refused the procedure if he [or she] had been informed of the risks." We reject both the "subjective" test and the appellant's "hybrid" test for causation and adopt the "objective" test, the test followed by most courts irrespective of whether the professional standard or the lay standard is employed. 2 D. Louisell & H. Williams, *supra* § 22.11, at 22-27 to 22-28; *see also, e.g., Woolley v. Henderson*, 418 A. (2d) at 1132; *Canterbury v. Spence*, 464 F. (2d) at 790-91; *Sard v. Hardy*, 379 A. (2d) at 1024-25. The rationale in support of the objective test of causation is cogently set forth by the Maryland Court of Appeals in the last cited case:

> [I]f a subjective [test] were applied, the testimony of the plaintiff as to what he [or she] would have hypothetically done would be the controlling consideration. Thus, proof of causation under a subjective [test] would ultimately turn on the credibility of the hindsight of a person seeking recovery after he had experienced a most undesirable result. [Citation omitted.] Such a test puts the physician in "jeopardy of the patient's hindsight and bitterness." [Citation omitted.] Furthermore, in cases where the plaintiff dies as a result of an unforewarned collateral consequence, the subjective [test] would bar recovery on an informed consent claim altogether. [Citation omitted.]

379 A. (2d) at 1025; *see also Cobbs v. Grant*, 502 P. (2d) at 11-12. We hold, therefore, that a causal connection exists between a physician's failure to inform and the patient's injury only if a reasonable person in the patient's position would have refused the treatment had he or she been told of the risk that resulted in injury. *Canterbury v. Spence*, 464 F. (2d) at 791; *Woolley v. Henderson*, 418 A. (2d) at 1132.

The trial judge, then, correctly refused to charge the requested instructions regarding the burden of proof as to causation and the test by which to judge causality.

Accordingly, each of the appellant's several exceptions is overruled and the judgment of the circuit court is

Affirmed.

SHAW and CURETON, JJ., concur.