**Rudolph M. COOPER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 4:94–1686–22.

United States District Court,
D. South Carolina,
Florence Division.

July 7, 1995.

---

954

Marion S. Fowler, III, Lake City, SC, Thomas E. Ruffin, Jr., Myrtle Beach, SC, for plaintiff.

J. Douglas Barnett, Assistant U.S. Attorney, Columbia, SC, for defendant.

## ORDER

CURRIE, District Judge.

This dental malpractice action brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, is before the court on the following motions: (1) the United States' Motion for Summary Judgment; and (2) Plaintiff's Motion to Compel discovery of a letter sent by the United States to one of its expert witnesses.[1] The court has carefully reviewed the entire record in this matter and heard oral argument of counsel on April 25, 1995. For reasons discussed below, the court grants Defendant's motion. The motion to compel is therefore moot.

Plaintiff filed this action against the United States under the FTCA. Plaintiff alleges that the United States is liable for damages allegedly resulting from the extraction of his lower right "wisdom" teeth. The extraction was performed on Mr. Cooper, a retired United States Air Force (USAF) senior master sergeant, on November 15, 1991, by Captain (Dr.) Todd E. Wynkoop, then a USAF dental officer, at Myrtle Beach Air Force Base Dental Clinic. On March 5, 1992, Mr. Cooper returned to the Clinic complaining of numbness in his lower right lip. This condition was subsequently diagnosed as paresthesia of the inferior alveolar nerve.

Plaintiff alleges that Dr. Wynkoop failed to obtain informed consent, or in the alternative, if he did obtain informed consent, that he did not do so in writing; that he failed to refer Mr. Cooper to an oral surgeon; and that he failed to meet the applicable standard of care in injecting Plaintiff with anesthesia and in performing the extraction of Mr. Cooper's tooth. These negligent acts or omissions, Plaintiff claims, proximately caused his paresthesia which caused him to experience slurring of speech, continual drooling, and continued biting of the lip while chewing food.

### I. Summary Judgment Standard

A principal purpose of summary judgment is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). To grant summary judgment, the court must find that there is no genuine issue as to any material fact and

---

**1.** The United States also moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss Verner Belle Cooper as a plaintiff, to dismiss her loss of marital consortium cause of action, to dismiss the breach of express warranty and breach of warranty of fitness for a particular purpose causes of action, to dismiss the demand for actual and compensatory damages in excess of the amount, $250,000.00, previously sought by Plaintiff in his administrative claim against the USAF, and to dismiss the demand for punitive damages.

At the beginning of oral argument, Plaintiffs consented to the United States' motion to dismiss. Accordingly, Mrs. Cooper was dismissed as a Plaintiff, Mr. Cooper's potential damages were limited to $250,000, punitive damages were barred, and the causes of action for loss of marital consortium, breach of express warranty, and breach of warranty of fitness for a particular purpose were dismissed.

that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' " and summary judgment is appropriate. *Id.* at 587, 106 S.Ct. at 1356. The judge's function is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment has the burden of establishing that there is no issue as to any material fact. Once the moving party has met its burden under Rule 56(c), an adverse party may not rest upon mere allegations or denials in its pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. *See also Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Plaintiff must present affirmative evidence in order to defeat a properly supported summary judgment motion. This is true even when the evidence is likely to be within Defendant's possession, as long as Plaintiff has a full opportunity to conduct discovery. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514.

**II. Summary Judgment Issues**

The United States argues in its supporting memorandum that summary judgment should be granted in its favor because no genuine issue of material fact exists on the following issues: (1) that Dr. Wynkoop was not required to obtain informed consent in writing from Mr. Cooper; (2) that, even if Dr. Wynkoop failed to obtain informed consent, such failure was not the proximate cause of Mr. Cooper's paresthesia; (3) that there were no viable treatment options for Mr. Cooper's tooth # 32 other than extraction; (4) that Dr. Wynkoop was qualified to extract Mr. Cooper's tooth # 32; (5) that Dr. Wynkoop met the standard of care in administering anesthesia to Mr. Cooper and in extracting Mr. Cooper's tooth # 32; (6) that, even if Dr. Wynkoop did jab Mr. Cooper in the back of the throat while performing the extraction, such jabbing did not constitute a breach of the standard of care; and (7) that, even if Dr. Wynkoop did jab Mr. Cooper in the back of the throat while performing the extraction, such jabbing was not the proximate cause of Mr. Cooper's paresthesia.

In response to the United States' motion, Plaintiffs argue in their memorandum in opposition (1) that Dr. Wynkoop's failure to obtain informed consent in writing or to document that verbal informed consent was obtained from Mr. Cooper before proceeding with the extraction was itself negligence; and (2) that such failure, if it occurred, caused Mr. Cooper's paresthesia insofar as it prevented him from refusing treatment by Dr. Wynkoop and procuring an oral surgeon to perform the extraction. Plaintiffs make no direct written response to any other issues. However, both in writing, though indirectly, in the informed consent/proximate causation context, and during oral argument,

they contended that Dr. Wynkoop was unqualified to extract Mr. Cooper's tooth.

### III. Summary Judgment Analysis

■ Under the FTCA, Congress provided that the United States is liable for injuries caused by the negligent acts of its employees acting within the scope of their employment "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Therefore, the court must look to the law of the place where the alleged act of negligence took place. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Because the alleged dental malpractice occurred in South Carolina, the issue presented is whether, under South Carolina law, the United States would be liable for Mr. Cooper's injuries.

### A. Informed Consent

Mr. Cooper alleges that Dr. Wynkoop failed to inform him regarding the procedure to be performed in extracting his tooth # 32, the potential risks involved in such procedure, the probability of success or failure associated with the procedure, the prognosis if the procedure was not carried out as planned, and any alternative treatments or procedures. (Compl. ¶¶ 8, 12(e), 15(a)–(f).) During his deposition, Mr. Cooper stated that the only words Dr. Wynkoop uttered to him before instituting the extraction were "Open your mouth wide." (Cooper Dep. at 60, 65–67.) The United States alleges that although it possesses neither a written informed consent form signed by Mr. Cooper nor any other documentation in Mr. Cooper's dental records evidencing that informed consent was obtained from Mr. Cooper, Dr. Wynkoop did talk with Mr. Cooper about his findings from the X-ray and reviewed the risks and complications of the procedure before performing the extraction. (Def.'s Memo in Supp., at 6; Wynkoop Dep. at 30–32).

#### 1. Informed consent need not be in writing

■ The United States argues that Dr. Wynkoop's failure to obtain informed consent in writing does not itself constitute a deviation from the standard of care owed to Mr.

Cooper because under South Carolina law there is no such requirement. In support of this position, the United States cites *Hook v. Rothstein*, 281 S.C. 541, 316 S.E.2d 690 (Ct. App.1984), in which the doctrine of informed consent was adopted. The court recognized that the doctrine generally imposes upon a health care provider a duty to disclose to the patient the risks and complications of the procedure the provider plans to perform. *Id.* at 547, 316 S.E.2d at 694–95. The scope of the duty to disclose is measured by those communications a reasonable medical practitioner in the same branch of medicine would make under the same or similar circumstances, a standard which the plaintiff must ordinarily establish by expert medical evidence. *Id.* at 553, 316 S.E.2d at 698.

The United States argues that in *Hook* the court, in holding that a professional standard determines the scope of the duty, was referring to the content, not the form, of the information conveyed by the health care provider to the patient. It correctly points out that neither in *Hook*, nor in any subsequent case, has a South Carolina appellate court held that informed consent must be provided in any particular form. The United States further supports its reading of *Hook* by reference to the deposition testimony of one of its expert witnesses, Edgar H. Peacock, Jr., D.D.S. Dr. Peacock testified that obtaining informed consent in writing is for the benefit of the provider, not the patient. (Peacock Dep. at 106–107.)

Plaintiff argues that the requirement in *Hook* that a health care practitioner make "proper disclosure" to a patient when obtaining informed consent necessitates either a patient's written informed consent or documentation by the practitioner in the patient's medical records. In support of his contention, Plaintiff cites the following excerpt from *Hook*:

[B]ecause an informed consent action is based on a failure by a physician to make **PROPER** disclosure when obtaining consent from a patient and is concerned with whether the physician departed from the standard of care of the reasonable medical

practitioner, the action, we think, properly belongs to the negligence theory.

*Id.* at 558, 316 S.E.2d at 700 (emphasis added). In further support of this argument, Plaintiff relies on the remarks of his expert, Richard W. DeChamplain, D.M.D., who testified during deposition that he would consider his dental students' failure to obtain written informed consent from a patient to be negligent. (DeChamplain Dep at 104, 109–110.) Plaintiffs refer to a 1976 publication by the Virginia State Health Department and the Department of Legal Medicine, Medical College of Virginia, on the law of informed consent recommending that informed consent be obtained in writing. (Pls.' Ex. E, "The Law of Informed Consent", Medico–Legal Bulletin, Vol. 25, No. 10 (1976) at 1–7.)

The *Hook* court's articulation of the underlying rationale for the doctrine of informed consent makes clear that the doctrine focuses on the content of the information conveyed to the patient and not on the form in which it is provided. "The basis of the doctrine is the patient's right to exercise control over his or her own body by deciding intelligently for himself or herself whether or not to submit to the particular procedure." *Id.* at 547–48, 316 S.E.2d at 695. The court delineated generally the particular areas the practitioner should discuss with the patient. *Id.* Thus, so long as the patient is provided sufficient information appropriate under the circumstances to make an intelligent choice about his or her own health care, the provider has discharged his duty without regard to the form in which such information is conveyed.[2]

## 2. Proximate causation

■ The United States next argues that even if Dr. Wynkoop failed to obtain informed consent, such failure was not the proximate cause of Mr. Cooper's paresthesia. The United States argues that Plaintiff has failed to satisfy the two-pronged test set

forth in *Hook* for showing causation in an informed consent case. This test requires Plaintiff to show: (1) the undisclosed risk materialized and caused Mr. Cooper injury and that had he been informed he would not have submitted to the procedure or treatment, and (2) a reasonable person in Mr. Cooper's position would have refused such treatment had he been told of the risk that resulted in injury. *Id.* at 564, 565, 316 S.E.2d at 704, 705.

As to the first prong, the United States argues that Plaintiffs have not offered any evidence establishing that Mr. Cooper would have refused treatment had he known about the possibility of nerve damage arising from the extraction. When asked during his deposition whether he would have refused to have the tooth pulled if he knew that nerve damage might result, Mr. Cooper testified "... I can't answer that, sir. I do not know. I was interested in the pain going away and taking care of the tooth...." (Cooper Dep. at 71–72.)

Plaintiff's attorneys assert that he would have declined treatment from Dr. Wynkoop and sought a more specialized, better-trained dental practitioner, such as an oral surgeon, to perform the extraction either later that day or on some later day. (Pls.' Memo in Opp., at 6–7; Hearing Transcript at 4–5, 8.) They, however, cannot point to any portion of the record, or produce an affidavit supplementing prior testimony, in which Mr. Cooper *himself* actually states that he would have declined treatment from Dr. Wynkoop on that day and sought out an oral surgeon to extract his tooth at a later time. Thus, Plaintiff has failed to comply with the requirement of Fed.R.Civ.P. 56(e). *See Amwest Sur. Ins. Co. v. Republic Nat. Bank,* 977 F.2d 122, 124 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1582, 123 L.Ed.2d 149 (4th Cir.1993).

Plaintiff was unable to supplement the record, either by pointing to a portion of Dr. DeChamplain's deposition testimony or by producing an affidavit from him, as required under Fed. R.Civ.P. 56, to the effect that obtaining informed consent from Mr. Cooper in writing would somehow have aided him in making a more intelligent choice.

---

**2.** Plaintiff's reliance on the deposition testimony of Dr. DeChamplain does not change this conclusion. Dr. DeChamplain asserted, in conclusory fashion, that he would consider his dental students' failure to obtain written informed consent from a patient to be negligent, but he did not explain why this is so, even when pressed for an explanation. (DeChamplain Dep. at 109–110.)

As to the second prong, the United States points out that all the expert witnesses—both the United States' two experts and Plaintiffs' expert—agree that a reasonable person suffering from the same ailment as Mr. Cooper would have had tooth #32 extracted. (Laskin Dep. at 53; Peacock Dep. at 66–67; DeChamplain Dep. at 85–86, 93.) Dr. DeChamplain testified that tooth #32 had to be extracted "as soon as possible, particularly if [the patient is] in pain", (DeChamplain Dep. at 85), as was the situation with Mr. Cooper, who testified that he "was having serious, severe pain, dental pain.... It was a steady, severe pain." (Cooper Dep. at 12.) Dr. DeChamplain further noted that Mr. Cooper's tooth #32 was abscessed and that "[d]elaying [extraction of the tooth] by 10 to 12 hours could result in a severe spread [of infection] to the pharynx, to the buccal space, the neck, and be a life-threatening, soft tissue abscess. Once it gets on a bone, it can be very dangerous." (DeChamplain Dep. at 85.) Because both sides' expert witnesses agree that a reasonable person in Mr. Cooper's position would have had the tooth extracted had he been told of the risk that resulted in injury, the United States asserts there is no genuine issue of material fact under the second prong of *Hook*.

Plaintiff contends that the issue whether a reasonable person in Mr. Cooper's position would have refused such treatment should be determined at trial, through "the open presentation of rebuttable evidence," rather than by the court by means of "opinionated statements" of doctors in the summary judgment context, because "reasonable minds could differ" as to what a reasonable person would have done. Plaintiff cites a portion of Dr. DeChamplain's deposition in which he testified that he had had patients who declined the extraction of molar teeth once they learned of the risk of nerve damage. (DeChamplain Dep. at 92–93.)

In a case such as this, however, in which a plaintiff must produce an expert's opinion at trial in order to prevail, where the defendant produces an expert in its favor on motion for summary judgment and the plaintiff fails to produce a contrary expert opinion in opposition to that motion, there is no genuine issue to be tried by the jury. *Jones v. Wike*, 654 F.2d 1129, 1130 (5th Cir. Unit B 1981). *Accord, Fitzgerald v. Manning*, 679 F.2d 341, 347 (4th Cir.1982).[3]

For Plaintiff to avoid summary judgment on the issue whether he can meet the second prong under *Hook*, therefore, he must present concrete evidence establishing in no uncertain terms that a reasonable person in Mr. Cooper's position would have refused such treatment had he been told of the risk that resulted in injury. This he has failed to do.

Plaintiffs' use of Dr. DeChamplain's deposition testimony that some of his patients had declined to have their molar teeth extracted once they learned of the risk of nerve damage simply does not go far enough to raise a genuine issue regarding what a reasonable person would do if he were in Mr. Cooper's position. Prior to referring to patients who had declined extraction, Dr. DeChamplain had unequivocally stated that Mr. Cooper's tooth had to be extracted, and subsequently stated that a reasonable person would have had the tooth extracted if he were in enough pain. (DeChamplain Dep. at 85–86, 93.) Therefore, it is clear that Dr. DeChamplain's testimony regarding patients who had declined having their molar teeth extracted once they learned of the risk of nerve damage must be viewed not as a contradiction of his other, more specific, testimony that a reasonable person would have had the tooth removed, but rather, an example of patients who acted unreasonably with regard to having their teeth extracted. *See Hook*, 281 S.C. at 555–56, 316 S.E.2d at 699 (proffered testimony that two witnesses would not have undergone a particular medical procedure

---

3. Expert testimony is also relevant in determining what a reasonable person would have done regarding a particular medical procedure. *See e.g., Hample v. Kreutner*, No. 91–UP–014, at 2 (S.C.App. January 9, 1991) (unpublished) (in affirming directed verdict for doctor on issue of proximate causation in an informed consent case, court looked to the medical testimony provided by expert witnesses to determine what reasonable person would have done and found that only evidence presented on issue was by the patient's expert, who testified that a reasonable person would have undergone the procedure.)

had they known of the possibility of suffering a fatal reaction was properly excluded because such testimony had no bearing on what a reasonable person who had never undergone the procedure would have done.).

Plaintiff's attorneys also argued during oral argument that a reasonable person, on being properly informed of risks and complications, would have requested or sought referral to an oral surgeon or a specialist, rather than have the extraction performed by a general dentist, or more particularly, by Dr. Wynkoop, who at the time of the extraction was only two years out of dental school. (Hearing Transcript at 4–5, 8, 22.) Plaintiffs' argument appears to be that, as a general rule, the more expert practitioner could perform the extraction of tooth # 32 with less chance of paresthesia occurring.

In making this argument, however, Plaintiff fails to draw the court's attention to a portion of the record, or otherwise produce an affidavit supplementing prior expert testimony, wherein *an expert* actually states that a reasonable person in Mr. Cooper's position, on being advised of the risk, would have declined treatment either from a general dentist or from Dr. Wynkoop on that day and would have instead sought out an oral surgeon to extract his tooth at a later time. Thus, Plaintiff again fails to comply with the requirement of Fed.R.Civ.P. 56(e). Moreover, the court notes that even if Plaintiff met the first two prongs under *Hook*, in order to prevail on the argument that a reasonable person would have opted for an oral surgeon to perform the extraction, he would have the additional burden of proving by a preponderance of the evidence that the extraction of Mr. Cooper's tooth would have been more successful—that is, that paresthesia would have been less likely to occur—had an oral surgeon or a specialist removed the tooth. On this issue, however, Plaintiff has similarly failed to come forward with competent evidence to controvert the United States' motion for summary judgment.

The court finds that the United States has established that there is no genuine issue of material fact on the issue whether Plaintiff satisfies either part of the two-pronged test articulated in *Hook* for showing causation in an informed consent case. Consequently, summary judgment for the United States is proper.[4]

## IV. PLAINTIFF'S MOTION TO COMPEL

Plaintiff has moved for an order to compel discovery of a letter sent by the United States to one of its expert witnesses, Dr. Laskin. Because the court has granted summary judgment in favor of the United States, the motion to compel is moot.

## V. CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment is GRANTED, and Plaintiff's motion to compel discovery is determined to be MOOT.

---

4. As to the standard of care issues raised in Defendant's motion for summary judgment, Plaintiff made no response in his memorandum in opposition and could point to no contrary evidence of record. Therefore, summary judgment is appropriate on these issues.