544 S.E.2d 38

Susan OLSON, Appellant/Respondent,

v.

FACULTY HOUSE OF CAROLINA, INC., and the University of South Carolina, Defendants, South Carolina Department of Labor, Licensing and Regulation, Intervener,

of whom Faculty House of Carolina, Inc. is Respondent/Appellant,

and

The University of South Carolina is, Respondent.

No. 3289.

Court of Appeals of South Carolina.

Heard Dec. 12, 2000.
Decided Jan. 22, 2001.
Rehearing Denied March 26, 2001.

196

198

Robert A. McKenzie and Gary H. Johnson, II, both of McDonald, McKenzie, Rubin, Miller & Lybrand, of Columbia, for appellant/respondent.

William L. Pope, of Pope & Rodgers, of Columbia, for respondent.

Andrew F. Lindemann, of Davidson, Morrison & Lindemann, of Columbia, for respondent/appellant.

Kent Lesesne, of S.C. Department of Labor, Licensing and Regulation, of Columbia, for intervener.

ANDERSON, Judge:

In this negligence action, Susan Olson appeals the Circuit Court's grants of summary judgment to the University of South Carolina ("the University") and to Faculty House of Carolina, Inc. ("Faculty House"). The court found Olson's action against the University was barred by the statute of limitations. In awarding summary judgment to Faculty House, the court held Olson failed to demonstrate a violation of the South Carolina Handicapped Accessibility Act, specifically S.C.Code Ann. § 10–5–260.[1] Faculty House appeals the denial of its cross motion for summary judgment on Olson's common law negligence action. We affirm as addressed.

## FACTUAL/PROCEDURAL BACKGROUND

Susan Olson has suffered from polio since childhood. At the time of the accident giving rise to these actions, she walked with the aid of crutches. On November 6, 1995, Olson was in

---

1. Since the events giving rise to these actions, the General Assembly substantially revised the Handicapped Accessibility Act, including § 10–5–260. *See* Act No. 303, 2000 S.C. Acts 2097.

The Faculty House, which is situated on the University's Columbia campus, when her right crutch encountered an unknown liquid on the floor and slipped out from under her. The Faculty House is a dining club operated by Faculty House in a building leased to it by the University. Olson did not fall, but in maintaining her balance, she tore her left rotator cuff and sustained other injuries. As a result, Olson is now confined to a wheelchair.

Olson filed a tort action against Faculty House on March 4, 1997. When Olson later discovered the University owned the premises on which the Faculty House operates, she sought to add the University as a defendant by motion dated January 22, 1998. The University answered asserting the statute of limitations as a bar and subsequently moved for summary judgment.

On September 30, 1998, the Circuit Court granted the University's motion for summary judgment dismissing it from the action. Olson did not immediately appeal this ruling.

Meanwhile, Olson pursued her actions against Faculty House for a violation of § 10–5–260 and common law negligence. Section 10–5–260 is a provision in this state's chapter governing the accessibility of public and governmental buildings to the disabled.

Faculty House moved for summary judgment on both causes of action. The Circuit Court concluded Olson failed to demonstrate a violation of a duty of care under state handicapped accessibility regulations as a matter of law. The court dismissed Olson's cause of action based on these regulations. However, the court found sufficient questions of material fact existed to preclude summary judgment on the common law negligence action. Faculty House appeals this ruling.

Olson appeals the earlier grant of summary judgment to the University and the grant of summary judgment to Faculty House.

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP;

*Baird v. Charleston County,* 333 S.C. 519, 511 S.E.2d 69 (1999); *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.,* 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999); *Young v. South Carolina Dep't of Corrections,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999); *see also Wells v. City of Lynchburg,* 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998) (a trial court should grant motion for summary judgment when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as matter of law). In determining whether any triable issue of fact exists so as to preclude summary judgment, the evidence and all inferences reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998); *Pye v. Aycock,* 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997). If triable issues exist, those issues must go to the jury for consideration. *Rothrock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991); *Joubert v. South Carolina Dep't of Soc. Servs.,* 341 S.C. 176, 534 S.E.2d 1 (Ct.App.2000).

## *LAW/ANALYSIS*

All actions in negligence require proof of: duty; breach; causation; and damages.

To prevail in an action founded in negligence, the plaintiff must establish three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty. If the plaintiff fails to prove any one of these elements, the action will fail. Actionable negligence is based upon the breach of duty to do or refrain from doing some particular act. A breach of duty exists when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed. The damages allegedly sustained must be shown to have been proximately caused, i.e. causally connected, to the breach of duty in order to warrant a recovery. If one neglects a duty which proximately causes injury to another, recovery is warranted.

*Vinson v. Hartley,* 324 S.C. 389, 399–400, 477 S.E.2d 715, 720 (Ct.App.1996) (citation omitted).

## I. Olson's Appeal of Summary Judgment
## in Favor of Faculty House[2]

Olson raises the following issues on appeal:

I. Did she establish Faculty House violated American National Standards Institute (ANSI) standards?

II. Does the Handicapped Accessibility Act create a higher duty of care than the common law?

III. Does S.C.Code Ann. § 10–5–260 give rise to a private cause of action permitting the recovery of monetary damages?

IV. Did Olson establish Faculty House's alleged violation of the Handicapped Accessibility Act proximately caused her injury?

### A. Duty & Breach

We first address Olson's argument that the South Carolina Handicapped Accessibility Act, S.C.Code Ann. §§ 10–5–210 to –330, established Faculty House's duty of care and this duty was higher than that required by common law. We then turn to whether Olson presented evidence Faculty House breached any alleged duty under the Handicapped Accessibility Act.

Olson maintains the court erred in finding she failed to establish the Faculty House violated the Handicapped Accessibility Act. Olson specifically argues: (1) ANSI standards regarding the recommended coefficient of friction apply to wet floors, as well as dry; and (2) Faculty House failed to properly maintain the floor's elements and components in a safe and usable condition. We disagree.

In 1963, the General Assembly enacted legislation for the construction of public buildings in such a manner as to make them accessible to physically disabled persons. Act No. 174, 1963 Acts 189. Eleven years later, the legislature acted again by passing the Handicapped Accessibility Act:

> The General Assembly hereby declares that it shall henceforth be the policy of this State to encourage and enable persons who are physically handicapped to achieve

---

2. We address the other issues raised in Olson's brief within the discussions of the University's and Faculty House's appeals.

maximum personal independence; to become gainfully employed; to use and enjoy all governmental buildings and facilities and all public buildings and facilities; and to otherwise participate fully in all aspects of society. The General Assembly resolves to enact legislation necessary to implement this policy and the purpose of this article is to begin this implementation.

Act No. 1171, 1974 Acts 2794 (codified as Code 1962, § 1–491 (Supp.1975) & S.C.Code Ann. § 10–5–230 (1986 & Supp.1999)).

In keeping with this goal, the legislature created the South Carolina Board for Barrier–Free Design ("Board"). *Id.* (codified as Code 1962, § 1–493 (Supp.1975) & S.C.Code Ann. § 10–5–230 (1986 & Supp.1999)). The Board's duties include the establishment, publication, and enforcement of minimum standards and specifications for the removal of architectural barriers to the handicapped in government and public buildings. *See id.* (codified as Code 1962, § 1–495(1) (Supp.1975) & S.C.Code Ann. § 10–5–250(1) (1986 & Supp.1999)) ("In this connection the Board shall adopt the latest revisions of the Standard Building Code and the American National Standards Institute specifications A117.1 with such modifications as the Board shall deem appropriate.").

Pursuant to the authority granted to it, the Board adopted ANSI specifications in its regulations. 23 S.C.Code Ann. Regs. 19–400.2(B)(1), as initially promulgated, stated:

The provisions of these rules and regulations may not adequately provide for every contingency relating to barriers for the handicapped. In *situations not contemplated by the provisions of these rules and regulations, compliance with the Standard "Specifications for Making Buildings and Facilities Accessible To, and Usable By the Physically Handicapped," American National Standards Institute (ANSI), A117.1 (1961 R.71) shall be evidence of compliance with the intent of these rules and regulations.*

(emphasis added).

The Board significantly revised Regulation 19–400 in 1983. Nevertheless, reference to and reliance upon ANSI specifications continue to pervade the regulation:

> *Every building or structure shall have all levels and areas made accessible to the physically handicapped in accordance with American National Standards Institute, Inc., "Providing Accessibility and Usability for Physically Handicapped People", ANSI A117.1 ...* and the requirements of this section....

23 S.C.Code Ann. Regs. 19–400.1(1) (Supp.1999) (emphasis added).

> *Terms and definitions contained in ANSI A117.1 are herein incorporated by reference.*

23 S.C.Code Ann. Regs. 19–400.2(3) (Supp.1999) (emphasis added).

Over the years, ANSI standards have changed and the parties in the instant case disagree as to the applicable set of ANSI standards. None of the ANSI guidelines presented include a recommended coefficient of friction. The 1961 ANSI guidelines merely require floors to have a "nonslip" surface. *See* 1961 ANSI A117.1, § 5.5.1. The 1992 ANSI guideline A117.1, § 4.5.1 reads:

> Slip resistance is based on a frictional force necessary to keep a shoe or crutch tip from slipping on a walking surface under the conditions of use likely to be found on the surface. *Although it is known that the static coefficient of friction is one basis of slip resistance, there is not as yet a generally accepted method to evaluate the slip resistance of walking surfaces for all use conditions.*

(emphasis added).

ANSI guidelines generally specify that floors "shall be stable, firm, and slip resistant, and shall comply with 4.5." *Id.*

Viewing the record in the light most favorable to Olson, there is no evidence Faculty House violated an ANSI standard or any other applicable standard regarding floor surfaces. Olson's expert witness, Bryan Durig, testified he knew of no ANSI minimum baseline coefficient of friction for a wet floor. Furthermore, Durig admitted he knew of no minimum baseline published for a wet floor. He conceded the American Disability Act ("ADA") standards were not in existence in 1976 when the Faculty House was renovated. Durig further averred that based on test results, the floor would not have been unreasonably dangerous had it been dry.

Olson presented evidence regarding standards from the Occupational Safety Health Act (OSHA) and ADA. Ronald Steinaker, P.E., an expert, acknowledged there is no consensus as to whether the OSHA standard of .5 refers to a wet or dry floor. He further admitted there is no consensus as to whether the ADA recommended coefficient of friction of .6 applies to wet or dry floors.

Steinaker tested the floor of the Faculty House and determined it to have a coefficient of friction when dry of .61. This would satisfy OSHA standards and even ADA standards, although they are not applicable. After removing sealer and or wax from the floor, Steinaker found it to have a .55 coefficient of friction when dry.

 Olson contends the Faculty House failed to properly maintain a structural or building element or component in a safe and usable condition as required by § 10–5–260. Section 10–5–260 provides: "It is the responsibility of the owner or the occupant of any property which contains structural or building elements or components required to be in compliance with this article, to continuously maintain these elements and components in a condition that is safe and usable by handicapped persons at all times." Olson, however, presented no testimony that the surface material of a floor is a structural or building element as intended by the legislature. The quintessence of statutory construction is legislative intent. *Hodges v. Rainey,* 341 S.C. 79, 533 S.E.2d 578 (2000). While § 10–5–260 may evidence a duty with respect to maintenance of the structural elements of buildings, we do not find it establishes a duty with regard to the floor surface material.

 Assuming, *arguendo,* § 10–5–260 does manifest some duty concerning the floor, Olson did not present any evidence Faculty House failed to maintain the floor elements in a "safe and usable" condition. Olson's sole argument is that the floor was not properly maintained because liquid was on it. We find the plain and ordinary meaning of "maintain" under § 10–5–260 refers to the safety of the structural elements of the floor, not to the presence of a liquid on its surface.

We conclude Olson failed to present any evidence Faculty House violated ANSI, ADA, OSHA, or other standards or

regulations regarding nonslip floors or that the floor material itself was defective or improperly maintained.

Olson argues the language of § 10–5–260 creates a higher standard of care than that required under common law and the court failed to recognize this. However, she cites no case law in support of her assertion. She instead relies solely on a paragraph from 57A Am.Jur.2d *Negligence* § 199:

> Persons who are known to have mental or physical disabilities, or who are young and inexperienced, are entitled to a degree of care exercised by others proportioned to their incapacity to protect themselves. They are not to be accorded the same treatment as persons of mature years and of sound mentality. No general rule can be articulated, for the standard of care in situations involving victims having these characteristics requires that a determination of what constitutes "reasonable care" be made in each individual case, taking into consideration the victim's known mental and physical condition. Generally, the greater the disability, the greater is the degree of care required.

This is a general section and does not address statutory standards of care. It is not enlightening on the duty of care owed under the Handicapped Accessibility Act.

 The common law regarding the duty of a business person to the business' patrons is well-established:

> [A] merchant is not an insurer of the safety of a customer in his store. His duty is to exercise due care to keep his premises in reasonably safe condition. Proof that a dangerous condition of the floor existed because of the presence of some foreign matter thereon is insufficient, standing alone, to support a finding of negligence. Unless it is inferable from the evidence that the storekeeper was responsible for creating the hazard, knowledge of its existence, either actual or constructive, is essential to recovery against him. The defendant will be charged with constructive notice whenever it appears that the condition has existed for such length of time prior to the injury that, under existing circumstances, he should have discovered and remedied it in the exercise of due care; conversely, absent evidence of such preexistence, the defendant may not be so charged.

*Anderson v. Winn–Dixie Greenville, Inc.*, 257 S.C. 75, 77, 184 S.E.2d 77, 77 (1971) (citing *Hunter v. Dixie Home Stores*, 232 S.C. 139, 101 S.E.2d 262 (1957); *Gilliland v. Pierce Motor Co.*, 235 S.C. 268, 111 S.E.2d 521 (1959); *Wimberly v. Winn–Dixie Greenville, Inc.*, 252 S.C. 117, 165 S.E.2d 627 (1969); *Pennington v. Zayre Corp.*, 252 S.C. 176, 165 S.E.2d 695 (1969)).

The determination of legislative intent is a matter of law. *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 459 S.E.2d 841 (1995). If a statute's language is plain and unambiguous, and articulates a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995). Where the provisions of a statute are clear, the court must apply those terms according to their literal meaning. *Id.* The appellate court cannot construe a statute without regard to its plain and ordinary meaning, and may not resort to subtle or forced construction in an attempt to limit or expand a statute's scope. *Id.; see also Timmons v. South Carolina Tricentennial Comm'n*, 254 S.C. 378, 175 S.E.2d 805 (1970) (where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language).

A rule of statutory construction is that any legislation which is in derogation of common law must be strictly construed and not extended in application beyond clear legislative intent. *Smalls v. Weed*, 293 S.C. 364, 360 S.E.2d 531 (Ct.App.1987); *South Carolina Dep't of Soc. Servs. v. Wheaton*, 323 S.C. 299, 474 S.E.2d 156 (Ct.App.1996). Therefore, a statute is not to be construed in derogation of common law rights if another interpretation is reasonable. *Hoogenboom v. City of Beaufort*, 315 S.C. 306, 433 S.E.2d 875 (Ct.App.1992).

The intent of § 10–5–260 is not to create any greater duty of care than the duty of care established under the common law. The General Assembly did *not* intend to abrogate the common law in favor of a heightened standard of care owed only to disabled persons. We reject the position taken by Olson that the statute articulates a higher standard of care than the common law.

## B. Private Cause of Action

As a corollary to the question of the existence of a duty as evidenced by the Act, Olson submits § 10–5–260 creates a private cause of action. Assuming, *arguendo*, Olson established a breach of the Handicapped Accessibility Act, we find § 10–5–260 does not create a private cause of action.

The main factor in determining whether a statute creates a private cause of action is legislative intent. *Dorman v. Aiken Communications, Inc.*, 303 S.C. 63, 398 S.E.2d 687 (1990). In *Dorman*, the Supreme Court elucidated:

> The legislative intent to grant or withhold a private right of action for violation of a statute or the failure to perform a statutory duty, is determined primarily from the language of the statute. . . . In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability.

*Id.* at 67, 398 S.E.2d at 689 (quoting *Whitworth v. Fast Fare Markets of S.C., Inc.*, 289 S.C. 418, 420, 338 S.E.2d 155, 156 (1985)).

Section 10–5–260 does not evidence any legislative intent that it created a private cause of action. This section states:

> After January 1, 1975, no person may construct or permit the construction of a governmental building or a public building or any facility of either unless the building and facility is designed in compliance with the standards and regulations adopted pursuant to this article.
>
> After January 1, 1975, no person may renovate or permit the renovation of a governmental building or a public building or any facility of either unless the portions or areas being renovated are designed in compliance with the standards and specifications established pursuant to this article.
>
> It is the responsibility of the owner or the occupant of any property which contains structural or building elements or components required to be in compliance with this article, to continuously maintain these elements and components in a

condition that is safe and usable by handicapped persons at all times.

The Handicapped Accessibility Act does include a private cause of action under another section. Section 10–5–290 reads:

> Any person who is injured, deprived of employment, denied access to public buildings or facilities, or is otherwise deprived of his rights as a citizen as declared in the statement of state policy set forth in Section 10–5–210 may enforce his rights *by injunction* and recover damages in a proper case in the court of common pleas *when his action is based on a violation of regulations promulgated by the board.*

(emphasis added).

This section is only available for a violation of a *regulation promulgated by the Board for Barrier–Free Design.* Faculty House attests that ANSI, OSHA, or other standards are not regulations promulgated by the Board. Conversely, Olson asseverates the Board's adoption of ANSI standards in its regulations was the functional equivalent of promulgating a regulation. Were we to accept Olson's argument, it is unavailing as Olson neither established a violation of ANSI standards under the Handicapped Accessibility Act nor asserted a cause of action pursuant to § 10–5–290.[3] We note additionally that Olson did not move for injunctive relief as provided by § 10–5–290.

A comparison of the language of § 10–5–260 with that of § 10–5–290 makes it abundantly certain the legislature did not intend for § 10–5–260 to create a private cause of action in addition to the one articulated in § 10–5–290.

The Handicapped Accessibility Act places further enforcement of its provisions solely with public officials rather than private individuals.

---

**3.** Olson's issue on appeal concerning this matter is framed solely as: Did the Court err in holding that there is no private right of action for the recovery of money damages for a breach of the duty of care set forth in S.C.Code Ann. § 10–5–260, as amended, such a recovery being provided for only where there is a violation of regulations promulgated by the South Carolina Board for Barrier Free Design as provided in S.C.Code Ann. § 10–5–290, as amended?

Enforcement—The enforcement of these Regulations including investigations shall be the responsibility of the Building Official of the county or municipality. If the county or the municipality does not have a Building Official, the Chief Fire Inspector shall then enforce these Regulations. If a county or municipality does not have a Building Official or a Chief Fire Inspector, then the Director of Building Codes and Regulatory Services/Inspection Services of the State Budget and Control Board shall enforce these Regulations in the county or municipality.

23 S.C.Code Ann. Regs. 19–400.5(5).

We find the Circuit Court did not err in concluding Olson did not demonstrate a private cause of action under § 10–5–260.

### C. Proximate Cause

Olson avers the Circuit Court erred in finding she failed to present evidence the floor's alleged insufficient coefficient of friction proximately caused her accident. In order to be actionable, negligence must be the proximate cause of a plaintiff's injury. *Hubbard v. Taylor,* 339 S.C. 582, 529 S.E.2d 549 (Ct.App.2000).

■■■■■ Proximate cause requires proof of both causation in fact and legal cause. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993). Causation in fact is proved by establishing the plaintiff's injury would not have occurred *"but for "* the defendant's negligence. *Id.* (emphasis added).

■■■■■ Legal cause, in contrast to the "but for" nature of causation in fact, turns on the issue of foreseeability. *Clark v. Cantrell,* 332 S.C. 433, 504 S.E.2d 605 (Ct.App.1998); *see also Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 88–89, 502 S.E.2d 78, 83 (1998) ("Causation in fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence. Legal cause is proved by establishing foreseeability.") (citations omitted). "The touchstone of proximate cause in South Carolina is foreseeability. Foreseeability is determined by looking to the natural and probable consequences of the act complained of." *Vinson v. Hartley,* 324 S.C. 389, 400, 477 S.E.2d 715, 721 (Ct.App.1996). Foreseeability is not determined from hindsight, but rather from the

defendant's perspective at the time of the complained of act. *Id.* at 324 S.C. at 401, 477 S.E.2d at 721.

"A negligent act or omission is a proximate cause of injury if, in a natural and continuous sequence of events, it produces the injury, and without it, the injury would not have occurred." *Id.* In other words, if the accident would have happened as a natural and probable consequence, even in the absence of the alleged breach, then a plaintiff has failed to demonstrate proximate cause.

Olson alleges that "but for" the floor being in violation of the Handicapped Accessibility Act, she would not have been injured. Viewing the record in the light most favorable to Olson, the evidence does not demonstrate that maintenance of the floor or the floor's coefficient of friction was responsible for Olson's accident. Rather, the evidence indicated that "but for" the unknown liquid on the floor, Olson would not have been injured.

Durig maintained the floor was unreasonably dangerous because it was wet, not because of its coefficient of friction. He avowed that based on the test results, *the floor would not have been unreasonably dangerous had it been dry.*

Olson similarly failed to present evidence her fall was foreseeable as the natural and probable consequence of the floor's coefficient of friction. The dry floor had a coefficient of friction of .61. The floor, when dry, met all of the proposed applicable standards regarding nonslip surfaces and coefficients of friction. While the question of proximate cause is ordinarily an issue for the jury, Olson failed to present any evidence the floor itself, not the liquid, was the cause in fact and the legal cause of her injury. *See id.* at 402, 477 S.E.2d at 721 (stating proximate cause is generally a jury question). The only reasonable conclusion to be drawn from the evidence is that the presence of the liquid proximately caused Olson's injury. The Circuit Court therefore properly declined to submit the case to a jury and granted summary judgment to Faculty House.

## II. Olson's Appeal of the University's Dismissal

Olson additionally appeals the grant of summary judgment dismissing the University from the case. The trial court

found Olson did not initiate her action within the two years mandated by the South Carolina Tort Claims Act.

The General Assembly promulgated the applicable statute of limitations in § 15–78–110:

> Except as provided for in Section 15–3–40, any action brought pursuant to this chapter is forever barred *unless an action is commenced within two years after the date the loss was or should have been discovered*; provided, that if the claimant first filed a claim pursuant to this chapter then the action for damages based upon the same occurrence is forever barred unless the action is commenced within three years of the date the loss was or should have been discovered.

(emphasis added).

The Tort Claims Act defines "loss" in this case as "bodily injury." S.C.Code Ann. § 15–78–30(f) (Supp.1999). Olson, therefore, was required to bring this action within two years from her injury on November 6, 1995. Olson, however, did not move to add the University until January 1998.

The University asserts Olson's appeal is not timely because Olson waited more than a year after the ruling before deciding to appeal the order. We agree.

Olson cites *Link v. School District of Pickens County,* 302 S.C. 1, 393 S.E.2d 176 (1990), for the proposition that it is permissible to wait to appeal the grant of summary judgment in a multi-claim action until final judgments have been rendered on all other claims. *Link,* however, did not deal with multiple defendants and is not controlling under the circumstances of this case.

██ Olson further relies on an unpublished order of this Court in an unrelated case. Unpublished orders by a single judge of this court are not binding on this Court. *Cf. Lanham v. Blue Cross & Blue Shield of S.C., Inc.,* 338 S.C. 343, 349, 526 S.E.2d 253, 256 (Ct.App.2000) ("[U]npublished opinions [of the appellate courts] have no precedential value.").

Rather, appealability turns on § 14–3–330. *See* James F. Flanagan, *South Carolina Civil Procedure* 430 (2d ed. 1996) ("The appealability of trial court orders remains determined

by the Supreme Court's jurisdictional statute."). Section 14–3–330 declares:

The Supreme Court shall have appellate jurisdiction for correction of errors of law in law cases, and shall review upon appeal:

(1) Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the court of common pleas and general sessions, brought there by original process or removed there from any inferior court or jurisdiction, and *final judgments in such actions* ; provided, that if no appeal be taken until final judgment is entered the court may upon appeal from such final judgment review any intermediate order or decree necessarily affecting the judgment not before appealed from;

(2) An order affecting a substantial rights made in an action when such order (a) in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action (b) grants or refuses a new trial or (c) strikes out an answer or any part thereof or any pleadings in any action.

(3) A final order affecting a substantial right made in any special proceeding or upon a summary application in any action after judgment; and

(4) An interlocutory order or decree in a court of common pleas granting, continuing, modifying or refusing an injunction or granting, continuing, modifying or refusing the appointment of a receiver.

(emphasis added).

 The court's grant of summary judgment to the University based on the statute of limitations was a final order because it left nothing further for determination. "Any judgment or decree, leaving some further act to be done by the court before the rights of the parties are determined, is interlocutory; *but if it so completely fixes the rights of the parties that the court has nothing further to do in the action, then it is final.*" *Adickes v. Allison & Bratton,* 21 S.C. 245, 259 (1883) (emphasis added); *see also Mid–State Distribs., Inc. v. Century Importers, Inc.,* 310 S.C. 330, 335, 426 S.E.2d 777, 780 (1993) ("South Carolina case law has established what constitutes an interlocutory appeal. If there

is some further act which must be done by the court prior to a determination of the rights of the parties, then the order is interlocutory. If a judgment determines the applicable law while leaving open questions of fact, it is not a final judgment.") (citations omitted).

The order expressly ruled that *all* of Olson's claims against the University were barred by the statute of limitations. This ruling therefore adjudicated all of the claims as to the University. Faculty House did not assert the statute of limitations as a defense. Olson's claims against Faculty House were thus separate and discrete from her claim against the University. The fact Olson had continuing claims against Faculty House was irrelevant to the dismissal of the University. Nothing short of direct appeal could resurrect the action against the University.

In today's world the proliferation of parties is a common occurrence. Were we to adopt Olson's view, a dismissed party would be "on hold" indefinitely.

■ The timely service of an appeal is a jurisdictional requirement that cannot be waived. Rule 203, SCACR. That rule enunciates, in pertinent part:

(a) *Notice.* A party intending to appeal must serve and file a notice of appeal and otherwise comply with these Rules.

(b) *Time for Service.*

(1) *Appeals from the Court of Common Pleas.* A notice of appeal shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment. . . .

■ Olson failed to timely serve her appeal of the trial court's dismissal of the University. Therefore, this Court may not review the grant of summary judgment.

Assuming, *arguendo,* she could appeal the dismissal, Olson claims the Handicapped Accessibility Act created an independent cause of action not subject to the Tort Claims Act's statute of limitations. This argument is without merit. We have already concluded § 10–5–260 does not establish a private cause of action in addition to that found in § 10–5–290.

Even if Olson had been permitted to proceed against the University under the Handicapped Accessibility Act, the Tort Claims Act's statute of limitations would bar the action.

The Tort Claims Act is the *exclusive* remedy when a party is injured by a governmental entity. Section 15–78–200 announces:

> *Notwithstanding any provision of law, this chapter, the "South Carolina Tort Claims Act" is the exclusive and sole remedy for any tort committed by an employee of a governmental entity while acting within the scope of the employee's official duty.* The provisions of this chapter establish limitations on and exemptions to the liability of the governmental entity and must be liberally construed in favor of limiting the liability of the governmental entity.

(emphasis added).

The University is clearly a governmental entity under the provisions of the Tort Claims Act. Section 15–78–30(d) defines "governmental entity" as the State or its political subdivisions. Concomitantly, § 15–78–30(e) declares:

> "State" means the State of South Carolina and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, including the South Carolina Protection and Advocacy System for the Handicapped, Inc., and institutions, including state-supported governmental health care facilities, schools, colleges, *universities,* and technical colleges.

(emphasis added).

■ The Tort Claims Act thus governs this action regardless of the Handicapped Accessibility Act. At most, the Handicapped Accessibility Act provides evidence of a duty owed to Olson by the University to maintain its buildings in a manner in which they are accessible to the handicapped—it does not supplant or override the Tort Claims Act.

We find the Circuit Court properly declined to permit Olson to pursue a cause of action based on the Handicapped Accessibility Act. The two-year statute of limitations found in the Tort Claims Act is applicable to all causes of action against the University and other governmental entities whether the al-

leged duty violated arises under the Handicapped Accessibility Act, another statute, or common law.

### III. Faculty House's Appeal

Faculty House appeals the Circuit Court's denial of its motion for summary judgment on the ground Olson failed to demonstrate Faculty House was negligent by either placing the liquid on the floor or by failing to remove it after having actual or constructive notice of the liquid's presence.

We are aware that generally, the denial of a motion for summary judgment is not immediately appealable. *Ballenger v. Bowen*, 313 S.C. 476, 443 S.E.2d 379 (1994). Our appellate courts, however, have recognized an exception to this rule. Specifically, the courts have made a practice of accepting appeals of denials of interlocutory orders not ordinarily immediately appealable when these appeals are companion to issues that are reviewable.

Our examination of the case law regarding this exception begins with the Supreme Court's agreement to consider an appeal of whether a trial court erred in failing to require a party make its complaint more definite in *Briggs v. Richardson*, 273 S.C. 376, 256 S.E.2d 544 (1979). Additionally appealed to the Court for its review was an issue of whether the trial court erred in overruling the appellant's demurrer. Presented with the question of whether to address the denial of the motion for a more definite complaint, the *Briggs* Court pronounced: "While not normally appealable, [the] issue [concerning the motion for a more definite complaint] is before the Court due to the appealability of the first issue [regarding the demurrer]." *Id.* at 379 n. 1, 256 S.E.2d at 546 n. 1.

This Court has taken a concordant view concerning the propriety of reviewing interlocutory orders not ordinarily immediately appealable.

In *Garrett v. Snedigar*, 293 S.C. 176, 359 S.E.2d 283 (Ct. App.1987), partners in a real estate venture brought an action for fraud, breach of contract, and violations of the South Carolina Uniform Securities Act against the organizer, a construction company, and an investment advisor who was retained to market the partnership. The investment advisor was also sued for negligence. The Circuit Court granted the

plaintiffs' motion for summary judgment, which concerned the issue of whether their interests in the partnership were securities. The trial court additionally granted the plaintiffs' motion to amend their cause of action for negligence and denied the investment advisor's summary judgment motion pertaining to this claim. On appeal, the investment advisor argued, *inter alia*, the trial court erred in acting on the plaintiffs' motion to amend without holding a hearing separate from his motion for summary judgment. In response, the Court stated:

> An interlocutory appeal of this issue ... is not normally allowed. *See Davis–McGee Mule Co. v. Marett*, 129 S.C. 36, 37, 123 S.E. 323, 323 (1924) ("No appeal can be made except from a final judgment."). An order denying summary judgment cannot be appealed, even after trial. *Holloman v. McAllister*, 289 S.C. 183, 345 S.E.2d 728 (1986). ***However, these issues are properly before us because the issue of whether the Circuit Court erred in granting the motion of the plaintiffs for partial summary judgment is appealable. See Briggs v. Richardson, 273 S.C. 376, 379, 256 S.E.2d 544, 546 (1979) ("While not normally appealable, this issue is before the Court due to the appealability of the first issue.").***

*Id.* at 183 n. 2, 359 S.E.2d at 287 n. 2 (emphasis added).

Numerous reviews of denials of summary judgment motions have occurred since *Garrett*. *See Anthony v. Padmar, Inc.*, 307 S.C. 503, 415 S.E.2d 828 (Ct.App.1992), *cited in* 4 Am. Jur.2d *Appellate Review* § 170 (1995) (in a case where opposing motions for summary judgment resulted in the trial court granting one and denying the other, the Court of Appeals held the party whose motion was denied may have the denial reviewed on the appeal because the question of whether the trial court erred in granting the other motion was appealable); *Pruitt v. Bowers*, 330 S.C. 483, 488, 499 S.E.2d 250, 253 (Ct.App.1998), *cert. denied* ("[Respondent/Appellant] argues the trial court erred in granting [Appellant/Respondent's] motion to amend her complaint. [Appellant/Respondent] responds that the order granting the motion is interlocutory and thus not appealable. We agree that under the precedent of *Briggs v. Richardson* ... and *Garrett v. Snedigar* ... [Respondent/Appellant's] appeal of the amendment order is interlocutory and generally not appealable, but may be considered

by the court because it accompanies the appeal of the grant of [Respondent/Appellant's] motion for summary judgment."); *Tanner v. Florence City–County Bldg. Comm'n,* 333 S.C. 549, 553, 511 S.E.2d 369, 371 (Ct.App.1999) (this Court ruled: "[A]n order that is not directly appealable will be considered if there is an appealable issue before this court.").

In *Davis v. Lunceford,* 287 S.C. 242, 335 S.E.2d 798 (1985), the Supreme Court held reviewing the denial of summary judgment was proper to resolve protracted litigation: "Because of the need for final resolution in this [13–year–old medical malpractice] case, we have allowed this direct appeal from the lower court's order denying appellant's motion for summary judgment."). *Id.* at 243, 335 S.E.2d at 799. The issue of whether the denial was proper was the only one on appeal.

This Court has reviewed the denial of Faculty House's motion for summary judgment as it pertained to Olson's common law negligence claim in accordance with the preceding authorities. We find it important to note that regardless of whether a denial of a motion for summary judgment is reviewable when in tandem with appealable issues, the parties have briefed, with specificity, the *merits* of the denial of Faculty House's motion for summary judgment. Numerous cases have been cited and argued in regard to a final disposition of this issue. In essence, the parties have consented to have the matter adjudicated by this tribunal. It would therefore be strikingly strange to bottom and premise our opinion on a technicality not raised by any party.

The continued viability of *Garrett* is debatable given the recent decisions of *Silverman v. Campbell,* 326 S.C. 208, 486 S.E.2d 1 (1997) and *Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994).

In *Ballenger,* the Court stated:

This Court has repeatedly held that the denial of summary judgment is not directly appealable. . . . Further, this Court has held that the denial of summary judgment is not reviewable even in an appeal from final judgment.

*Id.* at 476–77, 443 S.E.2d at 380.

In addition, the *Ballenger* Court noted that it is "unnecessary [for the trial judge] to make findings of fact and conclu-

sions of law in denying motions for summary judgment." *Id.* at 478 n. 1, 443 S.E.2d at 380 n. 1 (citing Rule 52, SCRCP). Thus, there would be no basis on which an appellate court could make its review.

In *Silverman,* our Supreme Court refused to consider the appellants' claim that the trial court had erred in denying its motion for summary judgment, although it did consider another issue raised by appellants because it was immediately appealable. Thus, the presence of an immediately appealable issue in the order did not make the denial of summary judgment reviewable in that instance. *Id.* at 211, 486 S.E.2d at 3; *cf. Holloman v. McAllister,* 289 S.C. 183, 345 S.E.2d 728 (1986) (declining to address denial of summary judgment after trial while addressing other appealable issues); *Davis v. Tripp,* 338 S.C. 226, 525 S.E.2d 528 (Ct.App.1999) (stating denial of summary judgment was not reviewable either before or after final judgment and expressly declining to address denial of summary judgment).

*Silverman* may represent an attempt to curtail *Garrett*-style exceptions, thereby requiring a closer inquiry into their continued viability.

Because of the dissonance in the precedent in regard to the appealability of the denial of a motion for summary judgment, we decline to address the issue on the merits.

### CONCLUSION

We hold Olson did not establish any violation of ANSI specifications, as referenced in the South Carolina Handicapped Accessibility Act, regarding the "slip-resistance" of Faculty House's flooring. We conclude the General Assembly did not intend to create a heightened standard of care, which businesses would owe solely to their disabled patrons, with the passage of the Handicapped Accessibility Act. We rule § 10–5–260 does *not* create a private cause of action. We find Olson did not satisfy the element of proximate cause by failing to show "but for" the lack of "slip-resistance" on Faculty House's flooring, she would not have incurred her injuries.

The Tort Claims Act governs tort actions brought against the state or its political subdivisions. It is the exclusive remedy for persons injured by a governmental entity. The

University is an agency of South Carolina state government. Therefore, the provisions of the Tort Claims Act apply in the instant case. Pursuant to the Tort Claims Act, claimants have two years from the date of injury to institute litigation against a tortfeasor governmental entity. Olson did not add the University to the action until more than two years had elapsed after her fall at the Faculty House. This Court affirms the Circuit Court's ruling that Olson was time-barred in her claim against the University.

Finally, we decline to address the Circuit Court's denial of Faculty House's motion for summary judgment regarding Olson's common law negligence claim.

For the foregoing reasons, the Circuit Court's judgments are

**AFFIRMED AS ADDRESSED.**

CURETON and SHULER, J.J., concur.