THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 James M. Rodriquez and Lise Rodriguez, Appellants,
 
 
 

v.

 
 
 
 Eugene A. Eline, M.D., Lowcountry Bone & Joint Surgery, P.A., Lowcountry Medical Group, LLC., and Beaufort Memorial Hospital,
 
 
 

Appeal From Beaufort County
 Jackson V. Gregory, Circuit Court Judge

Unpublished Opinion No. 2006-UP-048
Submitted December 1, 2005  Filed January 20, 2006    

DISMISSED IN PART and AFFIRMED IN PART

 
 
 
 Terry Wayne Yarbrough, of Beaufort; for Appellants.
 John K. Blincow, Jr. and R. Gerald Chambers, of Charleston; Mary Bass Lohr and James S. Gibson, of Beaufort; for Respondents.
 
 
 

PER CURIAM:  This appeal stems from injuries James M. Rodriguez alleges to have suffered after Dr. Eugene A. Eline performed surgery on Rodriguezs back at Beaufort Memorial Hospital.   Rodriguez and his wife appeal the trial courts grant of summary judgment in favor of the Hospital.  Rodriguez also appeals the trial courts grant of a directed verdict in favor of Dr. Eline on Rodriguezs causes of action for lack of informed consent and battery.  Finally, the Rodriguezes appeal the trial courts denial of their motions for judgment not withstanding the verdict and new trial.  We dismiss in part and affirm in part.
FACTS
James Rodriguez first injured his back in January of 1996 when he lifted a chain-link fence while working as a driver for Coastal Mental Health.  He was diagnosed with a herniated disk, and Dr. Rhodin, who had treated Rodriguezs wife for many years, provided treatment.  Rodriguezs pain gradually improved, but in December of 1997, he re-injured his back while lifting a sink.  The pain from the injury was severe, and Dr. Rhodin referred Rodriguez to Dr. Eline, a board certified orthopedic surgeon.  
At the recommendation of Dr. Eline, Rodriguez underwent surgery on April 2, 1998. Initially, Rodriguezs condition seemed to improve, but in June, Rodriguez stood up suddenly and experienced a severe shooting pain in his left leg.  He reported this pain to Dr. Eline, who ordered an MRI.  After reviewing the results, Dr. Eline recommended fusing a section of Rodriguezs spine to prevent further disk problems and to promote stability.  Rodriguez admits Dr. Eline told him of the risks and benefits of surgery before the procedure was performed.
Rodriguez underwent this fusion surgery on September 24, 1998. To perform the fusion, Dr. Eline removed the disk that was degenerated and replaced it with a BAK cage.[1]  The BAK cage was a fairly new device, and just a few months earlier, Dr. Eline had trained to use the device.  However, the surgical procedure of performing an instrumental fusion was a routine part of Dr. Elines practice, and Rodriguezs own expert, Dr. Dunn, testified that all cage devices are similar.  
During the surgery, a sales representative from Spinetech, the company that produces BAK cages, was present.  According to the Hospitals policies, if a sales representative is in the operating room, the patient must be informed of the sales representatives presence and the purpose of that presence.  Prior to surgery, Rodriguez signed a consent form authorizing Dr. Eline to perform the surgery with the help of such assistants as may be selected by him; however, Dr. Eline never specifically told Rodriguez a sales representative would be present.  
After the surgery, Dr. Eline continued to treat Rodriguez until January 1999.  Rodriguez was still experiencing pain, however, and he sought a second opinion from Dr. Donald R. Johnson of the Carolina Spine Institute.  Dr. Johnson discovered the cage Dr. Eline had inserted was impinging on a nerve.  Dr. Johnson performed another surgery on Rodriguez, this time removing the cage and replacing it with screws.  Dr. Johnson opined that the damage to Rodriguezs nerve was not entirely repairable and found Rodriguez had a fifty percent impairment rating and was no longer employable.  
Rodriguez and his wife commenced a medical malpractice action against Dr. Eline and LowCountry Bone & Joint Surgery, LLC on June 18, 2001.[2]  This complaint was amended numerous times.  Pursuant to these amendments, LowCountry Medical Group, LLC (the surgical group with which Dr. Eline was employed) and Beaufort Memorial Hospital were added as defendants.  The third amended complaint was served on the Hospital on January 3, 2002, asserting causes of action for medical malpractice, negligent supervision, and loss of consortium.  In late February 2002, the Hospital moved for summary judgment, arguing the two-year statute of limitations of the South Carolina Tort Claims Act barred the Rodriguezes from asserting a cause of action against it.  
In July of 2002, the Rodriguezes moved to amend their third amended complaint to assert an additional cause of action against the Hospital, alleging Rodriguezs rights under the Patients Bill of Rights were violated by the presence of the surgical salesperson in the operating room during Rodriguezs surgery.  In February of 2003, the trial court granted the Hospitals motion for summary judgment, and therefore did not address the Rodriguezes motion to amend.  
The Rodriguezes immediately appealed the grant of summary judgment, and Dr. Eline moved to stay the action against him pending the appeal.  As a result, the Rodriguezes withdrew their appeal, and the case was remitted to the circuit court on May 1, 2003.  
The Rodriguezes action against Dr. Eline[3] went to trial on November 10, 2003.  The trial court directed a verdict in favor of Dr. Eline on the Rodriguezes request for punitive damages as well as on their causes of action for lack of informed consent, battery, breach of fiduciary duty, and breach of contract. After hearing all of the evidence, the jury returned a verdict in favor of Dr. Eline.  The Rodriguezes filed a Motion for JNOV and/or New Trial, arguing the jury verdict was based on passion, prejudice, or caprice.  The Rodriguezes further argued a new trial was warranted because the trial court erred in granting a directed verdict on their causes of action for lack of informed consent and medical battery.  The trial court denied the motion, and this appeal followed.  
STANDARD OF REVIEW
In reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP. Nexsen v. Haddock, 353 S.C. 74, 77, 576 S.E.2d 183, 185 (Ct. App. 2002). Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the non-moving party.  George v. Fabri, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). 
When ruling on directed verdict or JNOV motions, the trial court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  Sabb v. S.C. State Univ., 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002).  If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should have been denied.  Quesinberry v. Rouppasong, 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998).  However, this rule does not authorize submission of speculative, theoretical, and hypothetical views to the jury.  Hanahan v. Simpson, 326 S.C. 140, 150, 485 S.E.2d 903, 908 (1997).    In essence, the court must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in his favor.  Harvey v. Strickland, 350 S.C. 303, 309, 566 S.E.2d 529, 532 (2002). 
LAW/ANALYSIS
I.       Summary Judgment

The Rodriguezes first argue the trial court erred in granting summary judgment to the Hospital.  Specifically, they argue the two-year statute of limitations did not begin to run on their causes of action for lack of informed consent and violation of the Patients Bill of Rights until November of 2000, when they received discovery from the Hospital informing them a sales representative was in the operating room.   The Hospital argues the appeal from the trial courts order of summary judgment is untimely because the Rodriguezes did not file their appeal until more than a year after the ruling.  We agree.
In Olson v. Faculty House of Carolina, Inc., 344 S.C. 194, 544 S.E.2d 38 (Ct. App. 2001) affirmed in result by 354 S.C. 161, 580 S.E.2d 440 (2003), our court addressed a similar situation and found the appeal was untimely.[4]  In Olson, the plaintiff was injured in November of 1995 while visiting a dining club on the University of South Carolinas campus.  She filed an action against the dining club in March of 1997, and when she later discovered the club was owned by the University, she added the University as a defendant in January of 1998.  The University moved for summary judgment, arguing Olsons claim was barred by the two-year statute of limitations set forth in South Carolina Tort Claims Act.  The trial court granted the motion, and Olson did not immediately appeal this ruling.  Instead, Olson pursued her actions against the dining club.  The dining club then moved for summary judgment, and the trial court granted it as to one of Olsons causes of action.  Olson appealed this ruling as well as the earlier ruling granting summary judgment to the University.  Id. at 200, 544 S.E.2d at 41.
The University argued Olsons appeal was untimely because she waited more than a year after the ruling before deciding to appeal.  Our court agreed, explaining:

 The order [granting summary judgment to the University] ruled that all of Olsons claims against the University were barred by the statute of limitations.  This ruling therefore adjudicated all of the claims as to the University.  [The dining club] did not assert the statute of limitations as a defense.  Olsons claims against [the dining club] were thus separate and dis[tinct] from her claim against the University.  The fact Olson had continuing claims against [the dining club] was irrelevant to the dismissal of the University.  Nothing short of direct appeal could resurrect the action against the University.

Id. at 214, 544 S.E.2d at 48 (emphasis in original).
Here, as in Olson, the trial court found that all of the claims against the Hospital were barred by the statute of limitations.  Thus, the trial courts grant of summary judgment to the Hospital was a final order because it left nothing further for determination.  See S.C. Code Ann. § 14-3-330 (1976 & Supp. 2004) (explaining which orders are appealable).  Because the order was final as to the University, the Rodriguezes were required to serve the appeal within thirty days after receiving the written order granting summary judgment.[5]  Initially, the Rodriguezes met this deadline; however, they withdrew their appeal, and the case was remitted to the circuit court.   Because this new appeal was filed more than a year after the order granting summary judgment, our court is without jurisdiction to entertain the appeal.
II.     Directed Verdict 
Rodriguez next argues the trial court erred in granting a directed verdict on his claim for lack of informed consent and battery.  We disagree.
Our court outlined the elements of informed consent in Hook v. Rothstein, 281 S.C. 541, 547, 316 S.E.2d 690, 695 (Ct. App. 1984):

 Under the doctrine of informed consent, it is generally held that a physician who performs a . . . surgical procedure has a duty to disclose to a patient of sound mind, I the absence of an emergency that warrants immediate medical treatment, (1) the diagnosis, (2) the general nature of the contemplated procedure, (3) the material risks involved in the procedure, (4) the probability of success associated with the procedure, (5) the prognosis if the procedure is not carried out, and (6) the existence of any alternatives to the procedure.

The Hook court went on to reject the lay standard and [held] that the scope of a physicians duty to disclose is measured by those communications a reasonable medical practitioner in the same branch of medicine would make under the same or similar circumstances.  Id. at 553, 316 S.E.2d at 698.  Expert medical evidence is ordinarily required to establish this standard.  Id.  
During trial, Rodriguez presented testimony from numerous experts, most of whom testified regarding damages.  Two experts, Dr. Robert Dunn and Dr. Francis Dyro, testified regarding the standard of care a surgeon should employ when performing back surgery, but neither testified that Dr. Eline deviated from the standard of care regarding informed consent.  Although Dr. Dunn stated it was unacceptable to violate Hospital policies, when asked directly if a violation of Hospital policy was a violation of the generally accepted standard of practice, Dr. Dunn stated, Well, I mean a hospital wont let you operate in a hospital that you dont have privileges in.  I mean   if they do, it a violation of their own policy.  This testimony fell far short of the standard of care expert testimony required by Hook.
Rodriguez argues Hooks requirement for expert testimony only applies when there are questions regarding material risks of the procedure and medical judgment not in the realm of the average man.  Rodriguez claims his case falls outside of Hook because it involves issues which are in the average mans realm, such as (1) risks of the surgery due to the surgeons inexperience; (2) the patients right to be informed, as dictated by the Board of Directors of [the Hospital]; and (3) the deliberate violation of [H]ospital policy in order to conceal Dr. Elines inexperience. Although Rodriguez cites many cases, none of them lend support to his argument that Hook should be so limited, and we therefore decline to distinguish this case from the precedent established in Hook.
Rodriguez further argues that even if Hook applies, the trial court erred in granting a directed verdict because one of Dr. Elines experts testified at his deposition that the violation of hospital policy was a deviation from the generally accepted practice.  However, Dr. Elines case was not before the trial court when it granted the directed verdict, and it would therefore be improper for our court to consider the testimony.  See Weir v. Citicorp Natl Servs., Inc., 312 S.C. 511, 514-15, 435 S.E.2d 864, 864 (1993) (explaining that the appellate court applies the same standard a trial court uses when considering a directed verdict motion).
We therefore find no error in the trial courts grant of Dr. Elines motion for a directed verdict on Rodriguezs cause of action for lack of informed consent.  Furthermore, because Rodriguezs cause of action for battery is premised on a lack of informed consent, we affirm the trial courts decision to grant a directed verdict on that cause of action as well.           
III. JNOV and New Trial Motions
Finally, the Rodriguezes argue the trial court erred in failing to grant their JNOV and new trial motions because the trial court did not allow them to cross-examine two of Dr. Elines experts about their relationship with the South Carolina Joint Underwriting Association (JUA).  However, the Rodriguezes failed to argue this ground in their JNOV and new trial motions.  Thus, it is not preserved for review.  Likewise, the Rodriguezes argument that their motions for JNOV and new trial should have been granted because the testimony from Dr. Elines experts was cumulative and prejudicial was not raised in their motions to the trial court.  Therefore, it too is not preserved for our review.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998).
CONCLUSION
Based on the foregoing, we decline to address the Rodriguezes appeal against the Hospital because it was not served within thirty days of the trial courts order granting summary judgment.  We affirm the trial courts grant of a directed verdict in favor of Dr. Eline on Rodriguezs causes of action for lack of informed consent and battery.  Finally, we affirm the trial courts denial of the Rodriguezes JNOV and new trial motions.
DISMISSED IN PART AND AFFIRMED IN PART.
HEARN, C.J., and HUFF and BEATTY, JJ., concur.  

[1] A BAK cage is a small cylinder that is implanted into the hole where a diskectomy is done in order to get the bones to fuse.  
[2] LowCountry Bone & Joint Surgery was ultimately dismissed.  After Dr. Eline presented his case, both parties stipulated that he was employed by Lowcountry Medical Group, not LowCountry Bone & Joint Surgery. 
[3] As explained before, the Rodriguezes also sued two medical entities they claimed Dr. Eline was affiliated with.  For claritys sake, Dr. Elines name is used to refer to both him and his surgical group.
[4] The supreme courts opinion in Olson does not address the timeliness of Olsons appeal against the University. 
[5] The Rodriguezes argue they were not required to appeal the grant of summary judgment until the claims against all the defendants were resolved and cite to Link v. School Dist. of Pickens County, 302 S.C. 1, 393 S.E.2d 176 (1990) for this proposition.  However, the Link court found an appellant who had multiple claims against one defendant could wait to appeal the grant of summary judgment as to one of those claims until a final judgment disposing of all claims was entered.  Id. at 5-6, 393 S.E.2d at 178-79. The Link case did not involve multiple defendants, and therefore, is not controlling.